SHELTON HOLDING CORPORATION, Appellant, *v.* 150 EAST FORTY-EIGHTH STREET CORPORATION et al., Respondents.

(Argued March 19, 1934; decided May 22, 1934.)

*Charles H. Tuttle, Saul S. Myers, Joseph K. Guerin* and *Morgan J. O'Brien, 2nd,* for appellant. The furnishing and installation of the kitchenette equipments was an express part of the contracts between the parties and an express part of the consideration moving to the plaintiff for the agreements on its part. Whether or not the equipments, when installed, became the property of the plaintiff, or became realty, the plaintiff was entitled, as

a matter of law, to enjoin its removal under the chattel mortgage. (*French* v. *Mayor*, 29 Barb. 363; *Levin* v. *Improved Property Holding Co.*, 141 App. Div. 106; *Wahle-Phillips Co.* v. *Fitzgerald*, 225 N. Y. 137; *Sherwin* v. *B. P. O. E., Brooklyn Lodge*, 148 Misc. Rep. 452; *Goldberg & Sons, Inc.*, v. *Gilet Bldg. Corp.*, 135 Misc. Rep. 158; *Rosenthal* v. *269 West 72nd St. Corp.*, 148 Misc. Rep. 854; *McCloskey* v. *Henderson*, 231 N. Y. 130; *Alf Holding Corp.* v. *American Stove Co.*, 253 N. Y. 450; *Chasnov* v. *Marlane Holding Co.*, 137 Misc. Rep. 332.)   Plaintiff had, as a matter of law and equity, a clear right to prevent and restrain the primary debtor from so removing or encumbering the kitchenette equipments as to defeat or impair the rights of exoneration and subrogation.   (*McCloskey* v. *Henderson*, 231 N. Y. 130; *Goldberg & Sons, Inc.*, v. *Gilet Bldg. Corp.*, 135 Misc. Rep. 158; *Smith* v. *First Nat. Bank*, 151 App. Div. 317; *M' Namara* v. *M' Namara*, 135 N. Y. Supp. 215; *Central Chandelier Co.* v. *Irving Trust Co.*, 259 N. Y. 343.)

*Benjamin Algase, Mortimer Hays* and *Harold Glatzer* for 150 East Forty-eighth Street Corporation et al., respondents.   There is no provision of the lease which deprived the tenant of the right to place a chattel mortgage upon the kitchenette equipments.   (*Metropolitan Concert Co.* v. *Sperry*, 9 N. Y. S. R. 342; 120 N. Y. 620; *Smusch* v. *Kohn*, 22 Misc. Rep. 344; *United Booking Offices* v. *Pittsburgh Life & Trust Co.*, 65 Misc. Rep. 31; *Loeser* v. *Liebman*, 14 N. Y. Supp. 569; 137 N. Y. 163; *507 Madison Ave. Realty Co.* v. *Martin*, 114 Misc. Rep. 315; *Webber* v. *Franklin Brewing Co.*, 123 App. Div. 465.)   The kitchenette equipment retained its character as personalty and remained the property of the tenant, entitling the tenant to place a chattel mortgage thereon.   (*Madfes* v. *Beverly Development Corp.*, 251 N. Y. 12; *Cosgrove* v. *Troescher*, 62 App. Div. 123; *Central Union Gas Co.* v. *Browning*, 210 N. Y. 10; *Delaware Hill Development Co.* v. *Delaware Bldg. Corp.*, 244 N. Y. Supp. 324; *Minett* v. *Durnherr*,

238 N. Y. Supp. 448; *Kelvinator Sales Corp.* v. *Byro Realty Corp.*, 136 Misc. Rep. 720; *Chasnov* v. *Marlane Holding Co.*, 137 Misc. Rep. 332; *Prisco & Soverio, Inc.*, v. *Bifulco Bros., Inc.*, 234 App. Div. 122; *McKeage* v. *Hanover Fire Ins. Co.*, 16 Hun, 239; 81 N. Y. 38; *United Booking Offices* v. *Pittsburgh L. & T. Co.*, 65 Misc. Rep. 31.)

LEHMAN, J.   In June, 1930, the plaintiff executed and delivered to the defendant 150 East Forty-eighth Street Corporation a lease of a parcel of land, with the buildings and improvements thereon to be erected as provided in the lease, for a term of twenty-one years with an option on the part of the lessee to renew for two additional twenty-one-year terms.   The lease provided that the lessee should erect upon the land a sixteen-story apartment hotel.   " The building shall be constructed in accordance with the plans prepared by Sugarman and Berger and duly filed with and approved by the Building Department, with such amplification, changes and additions as may be required by Chapter 61A of the Consolidated Laws of New York, as amended, or as may be approved from time to time by the lessor, and shall be of good material and modern construction   *   *   *   and shall be equal in construction and in grade of materials and equipment  to the San Carlos, situated at 150 East 50th Street, New York City."

Prior to the execution of the lease the plaintiff had filed plans in the Building Department for the erection of an apartment hotel on its land.   These plans, as filed and approved, made no provision for kitchenettes in connection with the hotel apartments, but in the plans for each apartment there was space reserved for closets. We are told that at the time the plans were filed, " kitchenettes " could not have been included lawfully. The ban was removed by new legislation.   The parties always contemplated that kitchenettes should be installed

when the bar was removed, and, before the construction of the apartment hotel was begun, amended plans were prepared by the architects, Sugarman and Berger, at the request of the lessee. They were approved by the plaintiff lessor and filed in the Building Department. These plans provided for kitchenettes in the spaces marked on the original plans as closets in one hundred and eighty-two apartments. Specifications for the kitchenette equipment were also prepared and approved.

The lease further provided that it should " at all times be subordinate to a mortgage or mortgages upon the demised premises now in existence or hereafter to be placed thereon, the aggregate amount of which shall not exceed the principal sum of $1,125,000. The lessee for itself, its successors and assigns, further covenants and agrees, subject to the foregoing limitations, to execute, acknowledge and deliver in proper and satisfactory form any and all instruments, papers or documents which may be prepared or necessary in the future to render this lease subject and subordinate to any such mortgage or mortgages," and further that " the lessee may, solely at its own expense, borrow upon the security of the land hereby leased and the said building, a sum not exceeding $1,125,000."

It is quite evident that the purpose of these clauses was to provide the lessee with the funds required for the erection of the apartment hotel. At that time the property was subject to a first mortgage of $290,000 and a second mortgage of $60,000. The first mortgage was held by the Continental Mortgage Guaranty Company, and it was thereafter consolidated with a building loan mortgage for $610,000, thus making a single first mortgage for $900,000. The plaintiff joined in the execution of the new mortgage, but " solely for the purpose of mortgaging the fee of the premises above described," and it was expressly agreed " that no obligation shall be attached to such Shelton Holding Corporation for payment of the

above-mentioned indebtedness or any part thereof." That mortgage is by its terms a lien on " all fixtures and articles of personal property, now or hereafter attached to, or used in connection with, the premises, all of which are covered by this mortgage." Subsequently a second mortgage was placed upon the property, with the plaintiff's co-operation.

The lessee having arranged for mortgages sufficient in amount to pay the contemplated cost of the erection of the apartment hotel, made a contract with the defendant Lane Ogle, Inc., for the construction of the building in accordance with the amended plans and specifications for the sum of $650,000. Included in the contract was, of course, the installation of kitchenette equipment. It was conceded at the trial " that Mr. Lane Ogle is the principal, if not the entire stockholder, of both Lane Ogle, Inc., and 150 East 48th Street Corporation," the lessee, and he was president of both. He had a right to do business in corporate form. He might, if he chose, organize and direct two or more corporations as business instrumentalities. These corporations then must be regarded as separate legal entities, but the fact that a single mind and a single will direct the activities of these separate entities carries with it the consequences which naturally flow therefrom. The same knowledge and the same intent must be ascribed to all.

The construction proceeded until the spring of 1931. Advances were made by the mortgagee in accordance with the building loan agreements. The kitchenette equipment was installed in the building in accordance with the amended plans and specifications, and was paid for by the lessee or the contractor, its *alter ego*, and apparently the money to make such payments was obtained from the mortgagee, under the building loan mortgage. Then financial complications arose, and the lessee abandoned the premises, and later a warrant was issued in dispossess proceedings. On May 28, 1931, the

lessee gave to Lane Ogle, Inc., a chattel mortgage covering the kitchenette equipment to secure notes executed simultaneously therewith, for the sum of $66,000. Thereafter interests in the mortgage were assigned to some creditors of the lessee, or its *alter ego*, the contractor, as security for pre-existing indebtedness.

In order to forestall attempt to remove the kitchenette equipment, the plaintiff has brought this action asking that the chattel mortgage and the assignments thereof be canceled of record, and that enforcement of the chattel mortgage be enjoined. After trial the justice at Special Term rendered a decision dismissing the complaint on the merits. He found that " at no time did the said chattels covered by the chattel mortgage upon their installation, or in any other manner, become an integral part of the realty." Undoubtedly the evidence shows that the kitchenette equipment can be readily removed from the premises without any structural changes or in any way damaging the real estate, though such removal would leave the building incomplete, and the decision contains a conclusion of law that " the lease did not provide that the said kitchenette equipment was to become realty or to become the property of the plaintiff."

It is said that after installation the kitchenette fixtures as matter of law remained personal property even though affixed to the realty and intended for use in connection with the realty. Perhaps that conclusion is supported by the authority of our decision in *Madfes* v. *Beverly Development Corp.* (251 N. Y. 12); though the appellant points out some considerations which might justify a distinction. It is unnecessary now to consider that question. Assuming, without further analysis, that the kitchenette equipment did not become part of the realty, the chattel mortgage would still be void if the lessee had by agreement parted with title to the personal property, before it executed the chattel mortgage, and the plaintiff may maintain this action if title passed to it by contract or

if it as owner of the realty has any right to resist the enforcement of a void mortgage.

In the case of *Madfes* v. *Beverly Development Corp.* this court was constrained by earlier decisions to hold that gas ranges, because of their inherent nature, cannot become part of the realty and that they retain their character as personalty even after annexation to realty. To such chattels section 67 of the Personal Property Law (Cons. Laws, ch. 41) had, therefore, no application, and reservation of title by a conditional vendor of the chattels was not void even against a purchaser of the realty for value and without notice. We decided nothing else. Certainly the owner of the chattels may part with title to them if he chooses, and the owner or mortgagee of realty may obtain title to the chattels independent of title to the land. (*Alf Holding Corp.* v. *American Stove Co.*, 253 N. Y. 450.) Indeed, though our original decision in *Madfes* v. *Beverly Development Corp.* adjudged that the gas ranges were the property of the conditional vendor, the remittitur was thereafter amended to provide for a new trial in order that proof of title independent of ownership of the land might be presented by the owner of the land. (*Madfes* v. *Beverly Development Corp.*, 251 N. Y. 589.) So in this case the problem is whether the lessee did voluntarily agree that title to the chattels should pass under the lease or mortgage as soon as they were affixed to the realty.

Here the record leaves little, if any, room for doubt. As we have already pointed out, the lease required the lessee to erect an apartment hotel in accordance with the filed plans and such changes and additions as might be approved from time to time by the lessor. The lessor did approve changes in the plans which called for kitchenette equipment. Without kitchenette equipment the building would not be complete for the use for which it was designed, and the parties intended that a complete apartment hotel should be placed upon the leased realty,

ánd that kitchenette equipment should be installed by the lessee. The justice at Special Term has found that "both the defendant Lane Ogle, Inc., and the plaintiff wanted the kitchenette equipment. It was a fundamental part of the whole agreement between the plaintiff and the said lessee from the beginning. The subject of kitchenette equipment came up constantly both before and after the execution of the said lease."

The only fair inference under these circumstances is that the parties intended and agreed that the lessee was required to install the kitchenette equipment as part of its duty to construct the apartment hotel in accordance with the amendment to the filed plans as approved by the lessor, and that upon its installation the lessee abandoned all right to remove the fixtures or to sell or mortgage them as personalty. Doubt, if otherwise possible, disappears when the building loan mortgage is examined and the transactions of the parties under that mortgage are analyzed.

The mortgage provides, as we have pointed out, that it covers "all fixtures and articles of personal property, now or hereafter attached to or used in connection with, the premises." That clause covers personal property which does not by affixation become part of the realty. (*Alf Holding Corp.* v. *American Stove Co., supra.*) The lessee obtained advances under the mortgage to pay for this equipment. It did pay for it. The lessor's title to the land is thus subjected to the lien of moneys spent for this permanent improvement, yet the lessee claims the right to dismember the building and render it incomplete for the purpose for which it was designed. That cannot be. (Cf. *Wahle Phillips Co.* v. *Fitzgerald*, 225 N. Y. 137.) The lessee could not confer upon another by a chattel mortgage rights and title in the property greater than it possessed, especially since the mortgagee received the mortgage with full knowledge of the circumstances and with intent to defeat the clearly apparent purpose

of the lease and first mortgage. The other defendants stand in no better position.

The opinion of the justice at Special Term shows that he disregarded many of these considerations because the holder of the first mortgage is not a party to the litigation and its rights are not before the court. It is said that perhaps the holder might have released its interest in the kitchenette equipment, though covered by the mortgage. A release by the mortgagor, if such there be, would not change the rights of this plaintiff to the hotel building with the personal property installed in accordance with the provisions of the lease; nor would it serve to release the plaintiff's real property from the lien of advances made under the mortgage for the purchase of the personal property.

We are told also that the parties in effect stipulated at the trial that the only issue to be decided was whether the chattels became by annexation part of the realty. We do not so read the record.

The judgments should be reversed, with costs in all courts, and judgment directed in favor of the plaintiff in accordance with the prayer of the complaint.

POUND, Ch. J., CRANE, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgment accordingly.