THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff, *v.* SANFORD REAL ESTATE CORPORATION and Others, Defendants.*

County Court, Monroe County, January 10, 1935.

*Affd., 246 App. Div. 567.

Remington & Remington [*Thomas H. Remington* and *Albert S. Willey* of counsel], for the plaintiff.

*McKay & Headley* [*Clarence W. McKay* of counsel], for the defendants.

LYNN, J. This is an action to foreclose a mortgage upon an apartment house in the city of Rochester, known as the " Coolidge." The dispute in the action arises upon the answers of the defendant Sanford Real Estate Corporation, owner of the equity of redemption, and Charles D. Brown, the holder of a chattel mortgage, and involves the ownership of fixtures and similar property in said apartment house. Briefly, the chattel mortgagee claims practically everything that could be taken out of the building, from the boiler which heats the building, to the window screens and awnings, and includes such items as the Frigidaire system, gas ranges, disappearing beds, window shades, light fixtures, bath tubs and hall carpets. Upon the trial the chattel mortgagee withdrew claim to the boiler and bath tubs and the hot water tank and heater. Enough and sufficiently varied items remain, however, to present an abundance of questions. I am of the opinion, however, that many of these questions are eliminated by the determination I have reached upon one of the disputed questions in the case.

This mortgage was made in the year 1928, and is — at least for the purposes of this discussion — in the short or statutory form contained in article 8 of chapter 50 of the Consolidated Laws. This fact is contested by the defendant Brown, the chattel mortgagee, and the Sanford Real Estate Corporation, the owner of the fee (hereafter referred to as the defendants), but I am persuaded that the defendants are in error in this regard; therefore, said article 8 of chapter 50, and particularly that part thereof known as section 254 of the Real Property Law, is applicable to this mortgage. Said section, so far as applicable, reads as follows:

" In mortgages of real property * * * the following or similar clauses and covenants, must be construed as follows:

" The words [Then follow words which are exactly, or nearly exactly, the words in this mortgage] must be construed as equivalent in meaning to the words [Then follows the wording of the former

stereotyped mortgage, containing a grant and a defeasance clause and the following words: ' Together with the appurtenances, and all the estate and rights of the party of the first part in and to said premises, together with all fixtures and articles of personal property attached to, or used in connection with, the premises.']"

Now, it is claimed by the defendants that because this mortgage contains other provisions in addition to the provisions in the statutory form of mortgage, the statute is not, therefore, applicable, and they cite as their authority the case of *Stahl* v. *Norwich* (204 App. Div. 552). In that case it was held that the statute had no application to the mortgage under consideration, because the so-called short form had not been used. That decision was imperative for the simple reason that there were no words in the mortgage involved corresponding to the words which the statute provides must be construed in a certain manner. As the words were not there, of course the construction could not follow. Here, however, irrespective of what other clauses may have been inserted, the words which the statute construes are contained in the mortgage. The conclusion seems to be unavoidable that the construction must follow, and, therefore, there must be read into this mortgage — what is not otherwise there — the words, " Together with all fixtures and articles of personal property attached to, or used in connection with, the premises." Either as fixtures or personal property attached to or used in connection with the premises, the following property would seem to be covered by this statutory clause: The boiler, Frigidaire system, hot water tank and heater, stationary tubs, sump pumps, return pumps, driers, ironing boards, cabinets, linoleum, Roll-a-way beds, gas ranges, window shades, light fixtures, curtain rods, elevator motors, kitchen sinks, bath tubs, basins, toilet seats and tanks. According to the testimony, the above-described property was upon the premises, either attached or used in connection with the same, when the mortgage was given, and was, therefore, covered by the mortgage. Whether any of the various articles be considered real property or personal property, it is unimportant to decide. That the Frigidaire system is part of the realty seems to be the law at present (*Frigidaire Sales Corp.* v. *Syracuse Investment Corp.*, 239 App. Div. 880, Fourth Dept.), and the fact that the gas ranges have the name of the apartment house burned into the enamel would probably distinguish this case from the case of *Madfes* v. *Beverly Development Corp.* (251 N. Y. 12), but as stated, it is not necessary in this case to determine whether any of these properties are realty or personalty.

There remains for consideration, 493 window screens, four

screen doors, 248 awnings, one Brownell stoker, one motor stoker, which were not on the premises at the time the mortgage was made, and about 450 yards of carpet, which was on the premises when the mortgage was made, in the form of hall runners.

As to the property not on the premises when the mortgage was made, it is apparent that it could not be covered by the mortgage subsequently made, unless it became a part of the real property. The mortgage could not cover personal property not then in existence. (*Perfect Lighting Fixtures Co., Inc.*, v. *Grubar Realty Corp.*, 228 App. Div. 145; *Hobart Holding Co., Inc.*, v. *Fortwell Realty Corp.*, 232 id. 689, 690.)

It seems to me that the window screens, screen doors and awnings have got to be classified as personal property, within the authority of the *Madfes* case. They were, of course, made to measurement for the separate openings and have been, in a manner, attached to the property. The very fact that they were put on by the present owner indicates that the building was considered completed without them, and their removal would only leave the premises as it was before they were bought, and, obviously, no serious damage to the property would be done by their removal The citation of authorities on the subject would serve no useful purpose, as all of the cases turn on facts regarding the particular unit under consideration. I am of the opinion that they are covered by the chattel mortgage and not by the plaintiff's mortgage.

Now, as to the two stokers — these seem to me to be in a class different to that of the screens and awnings. It is merely a case of changing the heating plants by modern improvement. Unlike the screens and awnings, they cannot be taken out and leave the property as it was. That it could, with some expense, be restored to its former condition is not, I think, enough. The fact is, if they were removed the plant would stop working, and notwithstanding the reservation of title by the seller, it was clearly the intention of the owner to make them a part of the heating plant and, therefore, a part of the property. They are, therefore, covered by the plaintiff's mortgage and not by the chattel mortgage.

There remains for consideration only the carpet used as runners in the main halls of the building. The testimony is that these carpets were made up to special measurements for these halls, and were fastened to the floors in some form, and, as they were put down on September 6, 1928, about three weeks before the mortgage was given, they were, it would seem, part of the personal property " attached to, or used in connection with, the premises." They are, therefore, covered by the plaintiff's mortgage.

Two other questions have been raised by the defendants, one, that the plaintiff is estopped from claiming that the disputed articles are not personal property. For reasons hereinafter given, among others, I do not think the elements of estoppel are in the case, but, in any event, if the mortgage covered the articles, whether realty, or personalty as I am holding, the plaintiff could hardly be claimed to have estopped itself from claiming them.

The other question raised by the defendant is, that viewing the plaintiff's mortgage as covering chattels, it was then necessary that it be filed as a chattel mortgage. This question seems to be disposed of by the decision in *Shelton Holding Corp.* v. *150 E. 48th St. Corp.* (264 N. Y. 339). The mortgage in that case does not seem to have been filed as a chattel mortgage, although the question is not specifically discussed and may be considered to have been disposed of by other facts in the case, which bear a remarkable similarity to the facts in the case at bar. There the chattel mortgage was given by one corporation to another, of both of which the same man was president and practically sole stockholder. The court says (on p. 344): " These corporations then must be regarded as separate legal entities, but the fact that a single mind and a single will direct the activities of these separate entities carries with it the consequences which naturally flow therefrom. The same knowledge and the same intent must be ascribed to all." Therefore, Brown is in no better position than the Sanford Real Estate Corporation, and he is not a *bona fide* purchaser or incumbrancer for value unless the real estate corporation is. The Sanford Real Estate Corporation bought the disputed articles in conjunction with the purchase of the real property, and of course had notice of the mortgage and was bound to know the legal effect thereof. Moreover, it is apparent, as between it and its grantor, these were considered as passing by the deed of the real property, as a separate bill of sale was taken covering the furniture in some of the rooms. It is not apparent how the Sanford Real Estate Corporation can take advantage of the failure to file the plaintiff's mortgage as a chattel mortgage even if that were required as against a *bona fide* purchaser, which latter is not decided. Again quoting from the *Shelton Holding Corp.* case (at pp. 347, 378), the court says: " The lessee could not confer upon another by a chattel mortgage rights and title in the property greater than it possessed, especially since the mortgagee received the mortgage with full knowledge of the circumstances and with intent to defeat the clearly apparent purpose of the lease and first mortgage. The other defendants stand in no better position." Eissenstat, who made the plaintiff's mortgage, could not convey

to the Sanford Real Estate Corporation more than he had, and the Sanford Real Estate Corporation could not convey to Brown more than it had.

During the pendency of the action, the receiver was ordered by this court to pay to Kennedy-Clark, Inc., a balance due under a conditional sales contract covering the Brownell stoker, and said order provided that if said stoker were finally held to be personal property, its value should be determined by the court in order that payment might be made to defendants for the same. Having determined that it became part of the real estate, it is unnecessary to go into the question of value.

Findings may be prepared in accordance with this opinion.