### In re H. HICKS & SON, Inc.

District Court, S. D. New York.
Feb. 21, 1935.

Samuel Robert Weltz, of New York City, for petitioning creditor.

Joseph B. Finkelstein, of New York City, for claimant.

HULBERT, District Judge.

An involuntary petition in bankruptcy was filed on April 25, 1933, and an order of adjudication was entered on May 5, 1933.

Schedules, verified by Mrs. Downs, the president of the bankrupt, were filed on June 13, 1933, in which the total liabilities were listed at about $27,000-odd.

On July 6, 1933, the assets were sold by the referee for the sum of $7,000 in cash and a waiver by creditors participating in their purchase of claims aggregating about $12,000.

On July 10, 1933, Hicks-Downs Realty Company, Inc., of which Mrs. Downs was also president, assigned an alleged claim against the bankrupt to one Francis J. Godoy.

This claim was filed with the referee on July 19, 1933, and was made up as follows:

### Statement of Account

Balance December 31, 1931, unpaid rent..... $13,716.14
Rent for months of January, February, March, April and May, 1932 @ $1666. per month (after reduction of rent from $36,- 000. to $20,000. per year), making a total of   8,330.00
Rent from June 1st to June 15, 1932.........    833.33

                              $22,879.47

Loan made for H. Hicks & Son, Inc. with the Hibernia Trust Company, on or about the 10th day of January, 1931, and repaid by Hicks-Downs Realty Co., Inc..........   5,000.00

  Total .................................. $27,879.47

The trustee moved to expunge. A compromise was effected and the claim allowed to the extent of $22,000 (without notice to other creditors).

Thereupon the petitioning creditor herein, having requested the trustee to seek a re-examination of said claim and the trustee having refused to do so, moved for such relief; said motion having been granted, an oral hearing was had, and upon the testimony taken the referee refused to expunge the claim, and the order thereon entered came on for review.

The circumstances in connection with the claim in question are so unusual that it will be the purpose of this memorandum to deal with them in some detail.

There are two corporations involved here: One, the bankrupt, H. Hicks & Son, Inc., formerly engaged in the confectionery and fruit business at 675 Fifth avenue, borough of Manhattan, New York City; the other, the Hicks-Downs Realty Company, dealing in real estate.

Both these companies were incorporated in 1919. Henry Downs and his wife owned *all* of their capital stock.

Upon the death of Mr. Downs in 1924, his widow, Maria C. Downs, became the owner of all, or substantially all, of the stock as well as president, director, and managing head of both corporations.

The bankrupt occupied premises owned by the Hicks-Downs Company under a lease made in 1920 at an annual rental of $24,000. In October, 1928, a new lease was made for ten years ending September 30, 1937, at an annual rental of $36,000. There is some evidence that the rent was reduced to $20,000 for the year 1930 and proof that it was entirely waived in 1931.

In June, 1932, a new lease was made to begin as of June 15, 1932, also ending on September 30, 1937, at a rental of $24,000.

A representative of the real estate firm of Cross & Brown, managing agents for the Realty Company, testified that he drew the present lease and that the former lease was canceled at that time. He produced the former lease and the existing lease, but was unable to locate the agreement of cancellation.

There was an assignment of rents under the last lease to the mortgagee, and the bankrupt since June 15, 1932, has paid rent to the assignee bank.

Singularly enough, while Cross & Brown collected rents from all other tenants of the building for the benefit of the Realty Company, *they never collected any rent at all from the bankrupt.*

In the statement of account the first item, for $13,716.14, was carried on the books of the bankrupt as an indebtedness to the Realty Company for rent which had accrued *prior to 1931* as reduced by credits during that year.

The second and third items, for $9,163.33, never appeared on the books of the bankrupt.

There is some evidence that the first item was canceled, on the books of the bankrupt, by a pencil notation made during 1932, and it is conceded that the item did *not* appear on new books of account opened as of January 1, 1933.

The court does not assume that the agreement of cancellation of the first lease, which was not produced, contained any particular waiver of all past-due rent.

The bankrupt issued a financial statement as of December 31, 1932. It showed total liabilities of about $27,000 and a net worth of about $26,000.

The rent claims of $22,879.47 here involved were not reflected in that statement, although, according to the evidence, $13,716.14 thereof *then* appeared on the books of account of the bankrupt.

This statement was shown by Mrs. Downs to the petitioning creditor in January, 1933, again at a general meeting of creditors of the bankrupt in April, 1933, and she testified to the facts therein contained at the sale on July 6, 1933.

As previously stated, the schedules in bankruptcy verified by Mrs. Downs, as of June 13, 1933, listed liabilities of about $27,000.

At the first meeting of creditors on June 22, 1933, Mrs. Downs testified that the schedules were a complete and correct account of her assets and liabilities.

All this time no mention was made of the claim in question, which would have doubled in amount the unsecured liabilities.

On September 18, 1933, Mrs. Downs testified before the referee that on July 6, 1933, immediately after the sale, she "went up to my store to take out my Hicks-Downs Realty—there was a big ledger in which it had Hicks & Son, and the other half was Hicks-Downs Realty; *and in the Hicks & Son record I found this indebtedness.*" (Italics mine.) Such was the basis of the claim herein.

In the case of Shelton Holding Corporation v. 150 East 48th Street Corporation, 264 N. Y. 339, 344, 191 N. E. 8, 9, there was involved a lease providing for the erection of a hotel, in accordance with the plan, calling for kitchenette equipment, and, in discussing the validity, as against the lessor, of a chattel mortgage made by the lessee to a third person, the court said: "The lessee, having arranged for mortgages sufficient in amount to pay the contemplated cost of the erection of the apartment hotel, made a contract with the defendant Lane Ogle, Inc., for the construction of the building in accordance with the amended plans, and specifications for the sum of $650,000. Included in the contract was, of course, the installation of kitchenette equipment. It was conceded at the trial 'that Mr. Lane Ogle is the principal, if not the entire stockholder, of both Lane Ogle, Inc., and 150 East 48th Street Corporation,' the lessee, and he was president of both. He had a right to do business in corporate form. He might, if he chose, organize and direct two or more corporations as business instrumentalities. *These corporations then must be regarded as separate legal entities, but the fact that a single mind and a single will direct the activities of the separate entities carries with it the consequences which naturally flow therefrom. The same knowledge and the same intent must be ascribed to all.*" (Italics mine).

Where two corporations are owned, controlled, and operated by one person, any claim presented by one of the corporations against the bankrupt estate of the other will be subjected to close scrutiny. The mere fact that the two corporations are under common ownership and control does not of course disqualify one of them from proving a claim against the other. In re Watertown Paper Company (C. C. A.) 169 F. 252.

But the situation here is one where the claimant is closely related to the bankrupt, and therefore the case is within the rule, which, after all, is a rule of common sense, that a claim presented by one closely related to the bankrupt must be satisfactorily established by the proof. In re Castle Braid Company (D. C.) 145 F. 224; Ohio Valley Bank Company v. Mack (C. C. A.) 163 F. 155, 24 L. R. A. (N. S.) 184; Remington on Bankruptcy, §§ 980–983.

In the case at bar, the schedules of the bankrupt, verified by the same person who owned and controlled the claimant corporation, listed no such liability to the claimant.

The financial statement issued by the bankrupt four months before bankruptcy listed its liabilities, but this claim was not among them. The bankrupt's books of account discontinued the item as a liability. Further, there is the testimony of the sole stockholder, president, and managing direc-

.. 

tor of both corporations that the schedules in bankruptcy were correct and complete.

If the claim allowed is upheld, the effect will be to reduce the participation of the unsecured creditors from about 40 per cent. to 15 per cent.

The repeated declarations and admissions that there was no such claim in existence, taken together with the other facts in the case, point to the conclusion that the claim had been waived or forgiven by the claimant.

The order of the referee will therefore be reversed and the claim expunged.