## In re DOWNTOWN ATHLETIC CLUB OF NEW YORK CITY, Inc.

District Court, S. D. New York.
Dec. 30, 1936.

Dunn, Daly & Bain, of New York City (William A. Daly, of New York City, of counsel), for trustees.

Salkin & Korn, of New York City, for General Realty & Utilities Corporation.

William L. Sayers and Goulding K. Wight, both of New York City, for debtor.

PATTERSON, District Judge.

The debtor owns a building at 19 West street, New York City, in which it has conducted an athletic and social club for the past six years. It also owns the furnishings in the building. On April 16, 1936, it filed a petition for reorganization. There were conflicting claims of liens on the furnishings that were not attached to the building. General Realty & Utilities Corporation, which held a building loan mortgage on the real estate, claimed that its mortgage was also a prior lien against the furnishings. The trustees for creditors of the debtor disputed that lien, claiming that a chattel mortgage held by them was the senior lien. In view of the dispute, the debtor obtained an order to show cause why priority of the asserted liens should not be determined. It being evident that no reorganization of the debtor could be effected until the relative rank of liens against the furnishings should be decided, evidence bearing on the point was taken

and arguments heard. The facts are not in dispute.

The debtor on April 17, 1929, made a building loan agreement with General Realty, whereby General Realty was to loan $3,000,000 to aid in the erection of a building on land owned by the debtor. The proposed building was described as one of 35 stories, with restaurant, gymnasium, swimming pool, pool and billiard rooms, to be equipped with modern equipment, building and equipment to be designed for use as an athletic and social club. The loan was to be secured by bond and mortgage covering the premises. One of the covenants in the agreement was that the debtor, whenever required, would deliver a chattel mortgage as further security for the building loan, the chattel mortgage to cover "all articles of personal property and fixtures appurtenant to and contained in the building" and to be subject to no encumbrances except those that might be waived by the lender. The $3,000,000 was to be advanced in installments against architects' certificates based on requisitions of the general contractor; it was agreed, however, that the last installment should not be due until "the bathtubs, wash basins, water closets, tanks, refrigerators, ranges and all other plumbing appurtenances and equipment, boilers, engines, machinery, elevators, furnaces, gas fixtures and appliances, hardware and all other fixtures appurtenant to said building and all materials used in the construction thereof have become a portion of the realty, and all other equipment in said building contained is free and clear of all encumbrances, except such as may be waived by the lender."

· On the same day and as part of the same transaction the debtor made bond and mortgage to General Realty for $3,000,000 due August 1, 1930. The mortgage covered the real estate and building to be erected, and contained also a personal property clause in this language: "Together with all fixtures and articles of personal property, now or hereafter attached to, or used in connection with, the premises, all of which are covered by this mortgage."

The mortgage also contained a clause to the effect that it was subject to the provisions of the building loan agreement.

· Both the building loan agreement and the mortgage were recorded. The building was finished, completely furnished and formally opened in September, 1930. The furnishings cost several hundred thousands of dollars. The last installment under the building loan agreement was one of $52,611.16, paid on October 9, 1930, bringing the total advanced by General Realty to the agreed $3,000,000.

By this time the debtor was financially embarrassed. The $3,000,000 building loan secured by mortgage was overdue, and the debtor was unable to refinance it by a permanent mortgage. The debtor also owed large balances to the general contractor, to architects, to concerns from which it had purchased furnishings and equipment on credit, and to concerns from which it had purchased supplies for operation of the club. These obligations were also overdue, and the debtor was in no position to meet them. It accordingly opened negotiations toward an extension of the building loan mortgage and an extension of its other obligations. Its efforts were successful. A written agreement was made on January 20, 1931, between the debtor and a committee representing practically all creditors except General Realty. By this agreement the debtor was to give to trustees for the creditors a bond for the total amount of the creditors' claims, a second mortgage on its real estate, and a chattel mortgage on "all fixtures, chattels and articles of personal property attached to or used in connection" with the real estate, and the creditors were to extend the time of payment of their claims to October 1, 1932. As to the mortgages the debtor represented and warranted that "the said mortgages shall be subordinate only to mortgages aggregating the sum of $3,000,000" and to existing conditional sales agreements. It was also provided that the mortgages should contain suitable subordination clauses to the end that they might be subordinated to permanent mortgages on a refinancing, any net avails of permanent mortgages in excess of $3,000,000 to be applied toward payment of the creditors' claims.

A few days later, on January 26, 1931, as part of the general arrangement to give the debtor time to meet its obligations, General Realty agreed in writing to extend maturity of its building loan mortgage to January 1, 1934, on terms not now material. A formal extension agreement as agreed on was executed on March 6, 1931, and was duly recorded.

The agreement between the debtor and the creditors' committee was carried into operation on March 24, 1931. From the contents of the instruments then executed,

it is evident that by this time the creditors had begun to doubt whether the building loan mortgage held by General Realty was a valid lien on the furnishings. The debtor made its bond to the trustees for $503,321.-74, secured by mortgage on the real estate and chattel mortgage on the personal property. The mortgage on the real estate was by specific language subject and subordinate to the mortgage held by General Realty. But in the chattel mortgage there was no outright subordination; the debtor warranted title to the furnishings, except as to "the right, if any" of the holder of the $3,000,000 mortgage "which purports to mortgage" the land, building and all articles of personal property attached to or used in connection with the building. The trustees thereafter issued and distributed to the creditors certificates of interest in the bond and mortgages. In the certificates there was a recital that the debtor had made a building loan mortgage of $3,000,000, "which mortgage purports to be a first mortgage on the land and building and all fixtures and articles of personal property then and thereafter attached to or used in connection with the said premises." In the certificates there was also a recital that the mortgages held by the trustees might be subordinated to permanent mortgages in excess of $3,000,-000 in refinancing the building loan mortgage, on the debtor's agreement to apply the net proceeds over $3,000,000 toward payment of the bond and mortgages held by the trustees. It appears that General Realty protested against the inclusion of the words "if any" in the chattel mortgage, and against the words "purports to be" in the certificates, but without avail.

The question is whether the building loan mortgage covered the furnishings not affixed to the building. That question is one on which the law of New York is controlling. Thompson v. Fairbanks, 196 U.S. 516, 25 S.Ct. 306, 49 L.Ed. 577. Under New York law a single mortgage may create a lien on real estate and chattels together, and in case such a mortgage is made by a corporation to support bonds issued by it, the mortgage if recorded as a mortgage on real estate need not be filed as a chattel mortgage. Lien Law (Consol. Laws, c. 33) § 231. While section 231 refers to "bonds", it covers the case of a single bond also. In re F. & D. Co., 256 F. 73 (C.C.A.2); Clement v. Congress Hall, 72 Misc. 519, 132 N.Y.S. 16.

The clause in the building loan mortgage already quoted, to the effect that all fixtures and articles of personal property then or thereafter "attached to or used in connection with the premises" are part of the mortgaged property, is a standard clause in a New York mortgage on real estate. See Real Property Law, § 254. By such a clause furnishings not physically affixed to the building are subjected to the mortgage on the realty, provided they are used in connection with the building for the purpose for which the building was designed. In other words, the clause is given an effect corresponding to the plain sense of the words used. Shelton Holding Corporation v. 150 East Forty-Eighth Street Corporation, 264 N.Y. 339, 191 N.E. 8; President and Directors of Manhattan Co. v. Ellda Corporation, 245 App.Div. 625, 283 N.Y.S. 827; see, also, Central Chandelier Co. v. Irving Trust Co., 259 N.Y. 343, 182 N.E. 10. The result may be otherwise where the mortgage and accompanying papers, taken as a whole, override the clause, indicating that there was no actual intention to put unaffixed furnishings under the lien of the mortgage, or perhaps where the parties by practical construction of the mortgage have made it clear that they did not deem such furnishings to be covered by the mortgage. Ex parte Benevolent and Protective Order of Elks, 69 F.(2d) 816 (C.C.A.2), was such a case. There the advances under the building loan were to be applied to the cost of erecting the building and were to be made without regard to whether the mortgagor installed any furnishings and equipment; the advances were actually made on completion of the building, and it was not until later that the furnishings were purchased and installed by the mortgagor; the prospectus under which the mortgagee sold participating certificates in the mortgage described only the land and building as the security. It was held that the furnishings were not subject to the mortgage, despite the personal property clause.

In the present case, however, the other provisions in the building loan agreement and mortgage do not contradict the personal property clause. In the building loan agreement it was declared that the loan was for the erection of a building equipped for use as an athletic and social club. The final installment was not to be paid until all equipment in the building should be free of encumbrances except those waived by the

716

mortgagee. In these features the case is quite different from the Elks Case, supra, relied on by the trustees for creditors. It is true that there was a clause to the effect that the mortgagor would give a chattel mortgage on the personal property contained in the building as further security, whenever required; but this is to be taken as merely a covenant for further assurance, raising no repugnancy to the personal property clause.

The later conduct of the mortgagee and the mortgagor was along the same lines. The mortgagee did not pay the last installment of building loan until the building had been completely furnished and equipped for use as a club. The mortgagor formally recognized that the building loan mortgage was a lien on the furnishings when it entered into the agreement with creditors to give them a chattel mortgage, by representing that the chattel mortgage would be subordinate to the building loan mortgage. And in the same agreement the chattel mortgage that the creditors agreed to take was to be on the fixtures, chattels, and articles of personal property "attached to or used in connection" with the building, a phrase no broader than the phrase in the building loan mortgage. The fact that the creditors, entitled under their agreement with the debtor to a chattel mortgage on fixtures, chattels, and articles of personal property "attached to or used in connection" with the building, actually exacted from the debtor a chattel mortgage that enumerated all the unattached furnishings is a plain admission by them that the building loan mortgage, covering as it did all fixtures and articles of personal property "attached to or used in connection with" the building, was likewise broad enough to take in all the unattached furnishings.

■ The conclusion is that the fixtures, furnishings, and equipment used in connection with the premises in the conduct of the club, whether affixed physically to the premises or unaffixed, became subject to the building loan mortgage from the time of installation, and that accordingly General Realty has the senior lien.

■ The priority of the lien of General Realty may be rested on another ground. Even if it be assumed that the personal property clause did not cover unaffixed furniture, it is still true that the building loan agreement contained a covenant by the borrower to place a chattel mortgage on such furniture as further security for the loan, whenever required by the lender. Such an agreement to give a mortgage on definite property, supported by good consideration, is an equitable mortgage, enforceable against the borrower and all others except bona fide purchasers for value without notice. Lynch v. Utica Insurance Co., 18 Wend.(N.Y.) 236; Stevens v. Watson, 4 Abb.Ct.App.Dec. 302; Payne v. Wilson, 74 N.Y. 348; Husted v. Ingraham, 75 N.Y. 251; Guaranty Trust Co. v. New York, etc., Ry. Co., 253 N.Y. 190, 199, 170 N.E. 887. Those who acquired interests under the chattel mortgage later executed had notice of the lien on furniture claimed by General Realty, both by the recording of the building loan agreement and by specific reference in the chattel mortgage. The mortgage in question was not one of the sort dealt with in Zartman v. First Nat. Bank, 189 N.Y. 267, 82 N.E. 127, 12 L.R.A.(N.S.) 1083.

■ There is still another ground of priority for the building loan mortgage as regards the furnishings. By the agreement of January 20, 1931, which is the source of the creditors' chattel mortgage on furnishings, the chattel mortgage as well as the mortgage on real estate to be given to creditors was represented to be subordinate to the building loan mortgage. There were no qualifying conditions to the subordination, no conditions such as were later, without fair warrant, inserted in the chattel mortgage itself. On the faith of that agreement, General Realty, as holder of the overdue building loan mortgage, granted an extension of maturity. In such a situation it would be quite unfair to permit the creditors to get a better lien than their bargain called for. The case is one where the creditors are estopped to assert that their chattel mortgage is a lien on furnishings prior to the building loan mortgage. Hardin v. Hyde, 40 Barb. 435; Rochester Savings Bank v. Averell, 26 Hun, 643; see, also, Londner v. Pearlman, 129 App.Div. 93, 113 N.Y.S. 420, affirmed 198 N.Y. 629, 92 N.E. 1090.

■ The trustees for creditors claim superiority because, it is said, the chattel mortgage is practically a purchase-money mortgage. There can be no dispute on the point that as to any furnishings that were under conditional sale or chattel mortgage when installed, the lien of the conditional vendor or chattel mortgagee would prevail

over the lien of General Realty. Washington Trust Co. v. Morse Iron Works & Dry Dock Co., 187 N.Y. 307, 79 N.E. 1022. But the creditors for whose benefit the trustees took the chattel mortgage were not in the position of conditional vendors or persons with liens on the furnishings at time of installation. These creditors are the general contractor, the architects, the merchants who sold supplies for the operation of the club, as well as the persons who sold furnishings on credit. None of them had a lien on the furnishings at the time when the furnishings were placed in the buildings; at least, no such lien has been proved. They were contract creditors without security on furnishings, down to the time when the debtor agreed to execute mortgages for their benefit.

The first mortgage held by the General Realty is the prior lien on the furnishings and equipment used in connection with the debtor's building as an athletic and social club. The chattel mortgage held by trustees for creditors is the subordinate lien. An order to this effect may be submitted on five days' notice.