SOUTHERN ASSOCIATES, INC., Respondent, v UNITED BRANDS COMPANY, Appellant.

First Department, March 27, 1979

200

APPEARANCES OF COUNSEL

*Charles G. Moerdler* of counsel (*Robert P. Stein, Eva L Coben* and *Gerald A. Greenberger* with him on the brief; *Stroock & Stroock & Lavan,* attorneys), for appellant.

*Philip Green* for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

We agree with the dissent that it was error for Special Term to direct a reference of the factual issues posed by Southern's motion for summary judgment. If it was Special Term's perception that issues existed, the motion should have been denied forthwith. (*Marshall, Bratter, Greene, Allison & Tucker v Mechner,* 53 AD2d 537.) But, contrary to the view of the dissenters, we find no issues of fact, and would award summary judgment to plaintiff.

As of January 16, 1978, when this suit was commenced, defendant, a net lessee of an entire building at premises known as 840 East 134th Street in The Bronx, was indebted to the landlord for $105,852.27 (plus interest), representing seven months' rent, and additional rent for real estate taxes and water and sewer charges. The lease has been in existence since 1960. It is due to expire in 1980. Defendant has paid no rent since July, 1977. Defendant has failed to pay real estate taxes since the third quarter for 1976/1977.

On December 23, 1960, York Associates, Inc. (the lessor) and American Seal-Kap Corporation entered into a 20-year net lease providing for the payment of a rental of $7,500 per month plus, as additional rent, all real estate taxes and water and sewer charges. Plaintiff is the present owner of the premises by deed recorded March 26, 1962. Defendant is the successor by merger of the original lessee.

In oppositon to the motion for summary judgment, defendant asserted that it and its predecessors had been paying the rent regularly for 17 years, and for the past several of those years to Great South Bay Company, pursuant to monthly statements from Great South Bay requesting payment. Defendant also noted that the City of New York sends tax and related statements to Great South Bay, that Great South Bay has made application as the owner to correct the tax assessment, that Great South Bay is the named insured in a fire insurance policy purchased by defendant to protect the premises in question, and also that York Associates, Inc., the original lessor, has sent letters to defendant requesting that it pay the real estate taxes and water and sewer charges which are in arrears. Thus, defendant claims that there is doubt as to the identity of the present owner and thus an issue of fact as to whom it should attorn. It also claims that the Brooklyn Savings Bank, which took an "Assignment of Lessor's Interest in Lease" is a necessary party.

The deeds on file with the County Clerk's office establish a chain of title from York, the original lessor, to Sol Goldman, Irving Goldman and Alex Di Lorenzo, Jr., to the present owner, plaintiff Southern Associates. From the date of incorporation, York and Southern have had only three stockholders: Sol Goldman, Irving Goldman and Alex Di Lorenzo. Except in name, the corporations are identical.

Great South Bay Co. is a partnership, comprised of Sol Goldman, Irving Goldman and Alex Di Lorenzo. The latter is now deceased and his estate has succeeded to his interest in the partnership. Great South Bay operates and manages the various real estate properties owned by Southern and York. York, Southern and Great South Bay all have identical officers. The two corporations, York and Southern, along with Great South Bay and the three principals, shared the same office. And it was to Great South Bay at this office that defendant paid rent until it stopped making payment.

The dissent finds significance in the fact that on an application to the Tax Commission for a correction of the tentative assessed valuation of the subject property, the applicant was listed as Great South Bay Company. On a line entitled "relation of applicant to property" the word "owner" was typed in. On the second page of the same document, Sol Goldman signed as a party applicant. The *bona fides* of such a factual issue must be weighed in the light of the following unchallenged sworn explanation by Sol Goldman: "Great South Bay Co. has always operated as a managing company collecting rents. If there has been loose terminology as to ownership of the 840 East 134th Street property, one thing is crystal clear and that is that this building has always been owned in corporations that have identical principals, since December 23, 1960."

█ █ If defendant is concerned about the ownership of the building, its consternation may be allayed by reliance on the recorded title, since the fact of recording raises a presumption of delivery to the grantee of a deed and title. (See *Munoz v Wilson,* 111 NY 295.) Although this presumption can be overcome "by proof of facts inconsistent with the transfer of title" *(Diamond v Wasserman,* 8 AD2d 623), none of the circumstances relied upon by the dissenters in any way disparages Southern's title. Rather, the facts support the interlocking relationship of those in the chain of title and their employment of Great South Bay, as managing agent. It is

quite clear that, although the record title may have changed over the term of the lease, the principals have remained the same. And, of course, the transfer of title to the property was, in legal effect, a transfer of the lease with its rights and obligations, and thus entitles Southern to sue for the unpaid rent. (See *Reltron Corp. v Voxakis Enterprises,* 57 AD2d 134, 137-138.)

■ ■ Defendant should not be permitted to escape or even delay its obligaton to pay rent, or to overcome the motion for summary judgment, by raising a feigned issue. On a motion for summary judgment the court must determine whether the factual issue is "genuine or unsubstantiated." *(Di Sabato v Soffes,* 9 AD2d 297, 300.) "If the issue claimed to exist is not 'genuine, but feigned, and * * * there is in truth nothing to be tried' summary judgment is properly granted" *(Rubin v Irving Trust Co.,* 305 NY 288, 306, citing *Curry v Mackenzie,* 239 NY 267, 270).

The fact that York Associates sent letters to defendant demanding the payment of arrearages in real estate taxes and water and sewer charges does not remove from defendant a reponsibility to pay to its landlord the moneys owed under the lease. Perhaps it would have been more provident for the landlord's office to send out rent demands on the stationery of Southern, but defendant's default had occurred long before the mailing of the letters. In the more than 15 years since Southern took title, the same interlocking relationship has existed between York, Southern and the three principals. Since 1960 defendant and its predecessors have been paying rent, and for the past several years to Great South Bay, without any claim by those in the chain of title that rent had not been paid. Defendant's concern as to which entity it should pay rent is a bogus issue.

■ The only other claim worthy of discussion is defendant's contention that the Brooklyn Savings Bank, the first mortgagee, was a necessary party because of an assignment of the net lessor's interest in the lease for security purposes. By the terms of the assignment, the assignor has the right to collect all rents, issues and profits from the leased premises as long as there is no default by the assignor in the payment of the indebtedness secured by the assignment. Upon default, the bank is entitled to collect the rents from the lessee. Without finding it necessary to reach the issue, the dissent intimates that a question exists as to whether the bank should have

been joined in this action. Yet, the notice of assignment provides that "all rental payments under said lease are payable as heretofore in accordance with the terms thereof *unless and until* you are otherwise notified in writing by the undersigned [bank]." (Emphasis added.) There is no requirement in the assignment itself that the bank appear in any action to recover rent. Pointedly to the contrary, the assignment provides that the bank is "without obligation so to do." Morever, plaintiff annexed to its moving papers a letter from the bank's attorneys stating that the bank has not "requested any rent from the Lessee nor does it have any intention to do so." Parenthetically, it should be noted, the lessor's default was apparently precipitated by the lessee's failure to pay rent since July, 1977.

■ The bank's rights under the assignment are contingent upon the lessor's default, of which it is certainly aware, not on its awareness of the pendency of any action against the lessee. Therefore, the issue raised in the dissent of whether plaintiff has informed the bank of this action is irrelevant. There is no such requirement in the assignment. Under the terms of the assignment, the assignor loses its right to collect rent only if the bank requests that the tenant pay rent to it. The bank has made no such demand. "[U]nder an assignment as collateral or as security for the payment of a debt, the assignor retains sufficient interest in the property or chose in action to be a 'real party in interest'." *(Texas San Juan Oil Corp. v An-Son Offshore Drilling Co.,* 194 F Supp 396, 397, citing cases; also *Mercantile Trust Co. v Gimbernat,* 143 App Div 305, affd 206 NY 722; *Marrero v Levitt,* 3 Misc 2d 555, 557, and cases cited therein.)

■ As the dissent notes, plaintiff has not appealed from the order of Special Term. Such fact does not preclude this court from awarding it summary judgment since we are empowered to search the record on a motion for summary judgment. (See *De Rosa v Slattery Contr. Co.,* 14 AD2d 278, 280-281, affd 12 NY2d 735; CPLR 3212, subd [a].)

Consequently, the order, Supreme Court, New York County (HUGHES, J.), entered September 7, 1978, holding in abeyance plaintiff's motion for summary judgment, pending a hearing before a Special Referee on the factual issues as to whether plaintiff is a proper party entitled to collect rent and maintain the action, and whether the mortgagee is a necessary party, should be reversed, on the law, with costs and disbursements,

summary judgment granted to plaintiff for the $52,500 base rent demanded in the complaint, plus interest on the installments from the respective due dates, the New York County Clerk directed to pay plaintiff the fund of $52,500 heretofore deposited by defendant pursuant to order of this court staying enforcement of the order appealed from, plus any interest accrued from the date of deposit, as a credit against the $52,500 plus interest, and the matter remanded to Special Term for determination of the additional rents payable to plaintiff under the lease.

Settle order.

FEIN, J. (dissenting in part). Defendant United Brands Company (United), appeals from an order which held in abeyance plaintiff's motion for summary judgment pending receipt and confirmation of a Referee's report following a hearing to be held on factual issues raised as to whether plaintiff is the proper party to maintain the action and whether Brooklyn Savings Bank, as mortgagee, should be joined as a necessary party.

The action seeks to recover rent, real estate taxes and water and sewer charges alleged to be due from defendant as the net lessee of the premises, for the period from July, 1977 through January, 1978. The 20-year lease between York Associates, Inc. (York) as lessor and American Seal-Kap Corporation, United's predecessor in interest, provided for monthly rental of $7,500 and imposed upon the lessee an obligation to "pay all duties, taxes, charges for water, sewer rents, rent for water".

We are in agreement that Special Term erred when it directed a reference of factual issues upon Southern's motion for summary judgment. Upon such a motion, once it is determined that disputed issues of fact exist, the motion should be denied. The court need not inquire further, since disposition of material issues of fact must await the triers of the facts and may not properly be referred to a referee (*Marshall, Bratter, Greene, Allison & Tucker v Mechner*, 53 AD2d 537; *Wilkinson & Co. v Calvine Mills*, 28 AD2d 675). This accords with the central function of the court upon such a motion to determine whether genuine triable issues exist. As has been frequently observed, issue finding, not issue determination, is the primary function of the court on motion for summary judgment (*Esteve v Abad*, 271 App Div 725). The grant of summary relief is inappropriate where there is any doubt as to the

existence of material and triable issues *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395).

The record is replete with factual inconsistencies sufficient to raise a triable issue as to who is entitled to recover the rent sued for. Although plaintiff did not appeal from the order of Special Term, it now requests summary judgment. *(Video Techniques v Teleprompter Corp.,* 60 AD2d 516.) However, there is no basis to accord summary relief where the very documents relied upon raise in issue plaintiff's standing in the action and its right to the rent sought to be recovered.

Defendant asserts that Southern is without authority to institute the suit and that Brooklyn Savings Bank is a necessary party. As observed, the lease was with York as lessor. Although Southern claims ownership pursuant to a deed dated March 21, 1962, United Brands has been paying rent to Great South Bay Company for the past several years pursuant to monthly rent statements from that company. Sol Goldman, president of York, alleges that Great South Bay is a partnership which served as managing agent for buildings owned by Southern and York. However, it is not without significance that Great South Bay had applied to the City Tax Commission to correct a tax assessment, wherein Goldman stated under oath that Great South Bay was the owner of the subject premises. Bills and statements with respect to New York City real estate taxes and water and sewer assessments were addressed and sent to Great South Bay, not Southern or York. Nevertheless, York had sent letters to defendant demanding real estate taxes and water and sewer charges and thereafter served a 10-day notice of default pursuant to article TENTH of the lease, over the signature of plaintiff's attorney, in his role as vice-president of York. Moreover, it appears that defendant, in accordance with the terms of the lease, procured fire insurance coverage to protect Great South Bay as named insured in September, 1977. The record affirmatively establishes that plaintiff's attorney had knowledge of such coverage and in fact notified defendant's former attorneys by letter dated April 6, 1978, that "United Brands Co., has placed my client, Great South Bay Company, at considerable risk by leaving the above captioned premises vacant." Furthermore, a letter dated April 11, 1978, from the mortgagee, Brooklyn Savings Bank, was addressed to "Sol & Irving Goldman & Alex DiLorenzo, Jr., c/o Great South Bay Co.", advising that a search of the tax records had revealed the existence of unpaid

real estate taxes which would create a default under the terms of the mortgage, and requesting that tax receipts be presented to the bank to avoid necessary legal action.

Under the circumstances, the fact that Alex Di Lorenzo and Sol and Irving Goldman were the sole stockholders of Southern and York and the partners comprising the partnership Great South Bay is not dispositive. Nor is it controlling that all three entities have the same office location. The complex network of corporate entities asserting different ownership rights, albeit they are creatures of Messrs. Goldman, Goldman and Di Lorenzo, demonstrates there is a question as to which entity is entitled to the rent. On this record there is an insufficient basis on which to invoke the drastic remedy of summary judgment. In this action, commenced in January, 1978, neither party has had a real opportunity to conduct necessary discovery proceedings.

It is not necessary to reach the question whether the mortgagee is a necessary party so as to require its joinder in the action. Although the record does not include a copy of the mortgage, it appears that Southern had assigned to Brooklyn Savings Bank its right, title and interest in and to the lease as security subject to the proviso: "So long as there shall exist no default by Assignor in the payment of any indebtedness secured hereby or in the performance of any obligation, covenant or agreement herein or in said mortgage or lease contained, Assignor shall have the right to collect upon, but not prior to accrual, all rents, issues and profits from said leased premises and to retain, use and enjoy the same." The record includes a letter from the mortgagee to Great South Bay containing notice that unpaid real estate taxes create a default under the terms of the mortgage. A subsequent letter from the bank's attorneys dated May 1, 1978, states that "the Bank at this time has not requested any rent from the Lessee nor does it have any intention to do so." Left unresolved is whether the bank was made aware of the pendency of this action and whether it has relinquished any existing right to proceed against the lessee.

In the face of these factual inconsistencies, I see no reason why we should reach out to "search the record" and grant summary judgment in favor of a plaintiff who has not even appealed.

Accordingly, the order, Supreme Court, New York County (HUGHES, J.), entered September 7, 1978, which held in abey-

ance plaintiff's motion for summary judgment, pending a hearing directed before a Special Referee on the factual issues as to whether plaintiff is a proper party entitled to collect rent and maintain the action and whether the mortgagee is a necessary party, should be reversed, and the motion for summary judgment denied. The moneys heretofore deposited by defendant with the Clerk of the Supreme Court pursuant to the order of this court staying enforcement of the order appealed from should remain on deposit pending final disposition of the action.

LUPIANO, J. (dissenting in part). While I subscribe to the rationale expressed by Justice FEIN in dissent, I express no view with respect to his observation that there is no reason to "search the record" and grant summary judgment in favor of plaintiff, who has not even appealed. There is no basis presented on this record for concluding, as the majority have done, that, although the record title may have changed and although different businesses or entities may have asserted in varying contexts a claim to be landlord, the fact that the principals of those businesses or entities are the same, renders academic defendant's assertion that plaintiff is not entitled to the rent because one of the other businesses may be so entitled. The affidavit submitted by Sol Goldman is not a complete answer to the tenant's fear and does not serve to eliminate any question of fact raised by the tenant's assertion that Great South Bay is its landlord. In effect, Mr. Goldman's assertion is that these various businesses were operating under the famous dictum of Dumas' "Three Musketeers"— "All for one, one for all." Apart from the legal concept of "piercing the corporate veil," separate corporations and business entities may be held to constitute a single unit in legal contemplation where each busienss is so related to, or organized or controlled by, the other as to be its mere agent, instrumentality, or *alter ego* (see *Shelton Holding Corp. v 150 East 48th St. Corp.*, 264 NY 339, 344). There is no convicing demonstration on this record, other than conclusory assertions, which would permit concluding, as a matter of law, that each of the business entities which might be entitled to the rent is a mere agent or *alter ego* of the others.

Accordingly, to direct that the funds representing the rent payments go into plaintiff's coffers may be a disservice to the creditors, if any, of the other business entities which might be entitled to such fund.

BIRNS, J. P., and EVANS, J., concur with SULLIVAN, J.; FEIN and LUPIANO, JJ., dissent in part in separate opinions.

Order, Supreme Court, New York County, entered on September 7, 1978, reversed, on the law, summary judgment granted to plaintiff for the $52,500 base rent demanded in the complaint, plus interest on the installments from the respective due dates, the New York County Clerk directed to pay plaintiff the fund of $52,500 heretofore deposited by defendant pursuant to order of this court staying enforcement of the order appealed from, plus any interest accrued from the date of deposit, as a credit against the $52,500 plus interest, and the matter remanded to Special Term for determination of the additional rents payable to plaintiff under the lease. Appellant shall recover of respondent $50 costs and disbursements of this appeal.