### W. A. GAGE & CO. v. BELL.

#### (District Court, W. D. Tennessee, E. D. August 1, 1903.)

#### No. 218.

1. BANKRUPTCY—INVOLUNTARY PROCEEDINGS—PLEADINGS.

   The simple forms of bankruptcy practice found in the general orders and forms prescribed by the Supreme Court should be followed, and there should be no unnecessary departures by falling into a habit of using the more costly, prolix, and less suitable forms of special pleadings and procedure used in chancery cases.

2. SAME—LIST OF CREDITORS FILED WITH ANSWER.

   The list of creditors required of the defendant debtor by Bankr. Act July 1, 1898, § 59d, 30 Stat. 561, c. 541 [U. S. Comp. St. 1901, p. 3445], when he sets up as a defense to a petition by a single creditor that the number of his creditors is more than 12, should contain, besides the bare names and addresses of such creditors, at least a statement of the amount due each, the date of the debt, when it is due, whether due by note or account or by some other form of contract, the consideration therefor, whether owed jointly with another as partner or otherwise, and such full particulars as will enable the petitioning creditor to negotiate with

others to join with him in the petition, and save the necessity and cost of a reference to ascertain the facts.

**3. SAME—REFERENCE.**

If the particulars of the debts shown in the list of creditors filed under Bankr. Act, § 59d, where it is alleged by the debtor that his debts are more than 12 in number, are not disclosed in the answer, the court will, if necessary, refer the case to ascertain them, and thus settle any dispute between the parties concerning them.

**4. SAME—AUTHORITY OF ATTORNEY—HOW QUESTIONED.**

The authority of the attorney appearing for the petitioning creditors cannot be challenged by the answer of the defendant debtor setting up a want of such authority, or averring any fraud of the attorney in procuring other creditors to join in the petition. This can only be done by a rule upon the attorney to show by what authority he appears for the party supported by affidavit showing the facts relied on to question the authority.

**5. SAME—PETITIONING CREDITORS—EFFECT OF PAYMENT OF DEBT.**

Whether payment of the debt of one of the petitioning creditors after the petition is filed will defeat the proceeding for lack of a sufficient number of creditors joining in the petition, quære.

In Bankruptcy. On exceptions to answer in involuntary proceedings.

Craig & Casey and Warinner & Warinner, for creditors.
C. E. Jerman and Hays & Biggs, for defendant.

HAMMOND, J. This case presents some rather unusual proceedings in bankruptcy practice, which it is well enough to settle for the better regulation of proceedings in similar cases. The original petition is by one creditor only, to whom the defendant debtor owes more than $8,000, and it alleges, as acts of bankruptcy, the conveyance to his nephew of a tract of land for a consideration of $8,000, the concealment of the conveyance from the records, subsequent mortgages to secure loans, particularly one by a local bank of which the nephew was cashier, all of which it is alleged were made without real consideration and to hinder and delay creditors, etc.; also, it charges as an act of bankruptcy the conveyance to one Harvey, for four notes aggregating $4,047.42, payable to this same Bank of Crockett, of a gin lot and its outfit, at Bell's Station; the notes being secured by a deed of trust made by Harvey to this same nephew Bell, the cashier of the bank. It alleges that these conveyances also were concealed and withheld from the record, as the others were, and were all made in contemplation of insolvency and to hinder and delay creditors. By amendments these conveyances were charged to be fraudulent preferences of the bank, effected by artful and roundabout conveyances, so managed as to avoid, if possible, an attack under the bankruptcy statute within the four-months limitation.

A demurrer to the petition and amended petition was overruled, and the defendant debtor answered, averring (1) that his creditors were more than 12 in number, of which he annexes a list; (2) that being chiefly a farmer, and engaged in the tillage of the soil, he was not liable to the bankruptcy statute; and (3) denying the alleged acts of bankruptcy, and demanding a jury.

The so-called list of creditors attached to the answer is simply a

list of 21 names, all at Bell's Station, with no other information as to their claims. But in the list appears the names of W. B. Thompkins and W. H. Poindexter. These two subsequently filed their petition asking to join with W. A. Gage & Co., as petitioning creditors; the first alleging that the defendant debtor owed him $1.90 on account, and the other that he owed him $25 for medical service. Each swore to this petition, which is a brief and plain statement that they wished to join, and seemingly giving as a reason that the defendant debtor had listed their debts in an effort to defeat Gage & Co., to have him adjudged a bankrupt. It would seem incredible that any one signing and swearing to such a petition could misunderstand its import and purpose. On a notice to show cause, the defendant debtor also filed an answer to this petition, stating that he was informed by the petitioners that they were misled and deceived as to its purpose, they supposing that they were simply filing their claims in bankruptcy, that if they had known the object they would not have signed it, and that they wish to dismiss or withdraw the petition. The defendant also states in this answer that he was indebted to Thompkins only as a surety for one Williams, who has since the controversy arose paid the debt, and he no longer owes Thompkins anything. He exhibits an affidavit of Poindexter's, and a paper intended to be the affidavit of Thompkins, which was read to him, and to which he assented; but, being warned that he might get into trouble, he refused to sign and swear to it.

The affidavit of Poindexter states that when he signed and swore to the petition he did not know its contents or purpose, and that if he had he never would have signed it. He says that Mr. Casey, one of the lawyers for Gage & Co., asked him if Bell did not owe him something, and told him that signing the petition was the only way to get it; he did not read the paper, and only a part of it was read to him; that he was told it was a matter of form only; that Mr. Casey brought the notary public with him, and that he signed it without any knowledge that it was a proceeding "to put Mr. Bell into bankruptcy"; that he had no intention of doing this, and wishes to dismiss and withdraw the petition. He acquits Mr. Casey of purposely misleading him, but says he was misled. The unsigned affidavit of Thompkins is to same effect, and it states that Bell was only a surety for Williams; that Williams paid all the debt but $1.90, for which small balance he has no desire to put Mr. Bell in bankruptcy, and never thought of such a thing, being of the impression that he was only proving his debt like all creditors had to do.

Later one Daniels filed his petition to join with Gage & Co. in their petition for an adjudication, stating that the defendant debtor owes him $2.25 assigned to him by one Thomas, for two years subscription to the county paper. He is not on Bell's list, but Thomas' name appears on it as a creditor.

To the answer of Bell, setting up that Poindexter and Thompkins did not knowingly join Gage & Co., that they were deceived, and did not authorize their petition to join as petitioning creditors, Gage & Co. file exceptions, taking an objection that it is irrelevant and immaterial, and presents a collateral issue which cannot be so pleaded;

that the authority of an attorney to appear cannot be thus challenged, and that the paper should be stricken from the files; also, there is a "replication" to that part of the answer which relates to the Thompkins debt, denying its payment.

To the notice to show cause on Daniels' petition Bell answers that Daniels is not a bona fide creditor; and that if there has been any assignment by Thomas it is fraudulent and void.

There is an affidavit of Mannie Williams that he bought of Thompkins cotton seed hulls to amount of $5, for which the defendant debtor Bell became his surety. He also owed Thompkins a small balance of account. About last May or first of June, after the proceedings in bankruptcy were commenced, he went to Thompkins' house to pay the debt. Thompkins was absent, but he paid his wife what was thought to be due, with the understanding, if there were any balance, he would pay Thompkins, who alone knew the true amount. He says frankly that he was eager to pay the debt to save Bell any trouble because of his suretyship and especially about this bankruptcy matter. He tried to pay Thompkins the balance claimed of $1.90, and offered it, but Thompkins said he was in a controversy about it, and refused it. He is anxious to pay it, and feels able. After the filing of this affidavit, Gage & Co. moved to amend their petition, and set up that outside of the disputed balance of $1.90 Bell owes Thompkins the sum of 82 cents on account for 750 "dirt bands," whatever these may be, at $1.10 per thousand.

Pending the hearing the defendant Bell gave notice and filed a motion that the attorneys for the petitioning creditors show by what authority they prosecuted the petition for Poindexter and Thompkins, to which no answer has yet been filed.

The court has set out thus particularly the pleadings and other steps taken in this case to protest that they seem to divert the proceedings in bankruptcy from the strict line of proper procedure and raise issues that may be collateral and immaterial. As will presently appear, these pleadings also seem trivial in this case because of the very small amounts involved; but still the importance of keeping the practice within rightful bounds is none the less; and, after all, the firm of original petitioning creditors has a debt of magnitude, and the struggle with them is to maintain their purpose to have a court of bankruptcy overhaul the alleged fraudulent transactions by which the defendant debtor's property to a large amount has passed into the hands of his home bank, to pay what are alleged to be fraudulently preferred debts. This one creditor firm, having thus been left in the lurch, finds itself confronted with a defense that there are more than 12 creditors, and therefore one creditor may not procure an adjudication under section 59b of the statute (Act July 1, 1898, 30 Stat. 561, c. 541 [U. S. Comp. St. 1901, p. 3445]). It is, in fact, therefore, a formidable litigation about amounts of considerable size, and the triviality of the other debts, not one of which is over $40, is merely an incident of that litigation.

It is to be observed that Form No. 6 (89 Fed. xxx, 32 C. C. A. liv) does not contemplate any other pleading than that of a brief and simple denial (1) that the defendant debtor has committed the act of

bankruptcy, or (2) that he is insolvent, and (3) an averment "that he should not be declared a bankrupt for any cause in said petition alleged." At first I was inclined to hold that no other pleading whatever was permissible than this, and that under it any defense whatever, whether by demurrer or otherwise, could be made that would defeat the petition for any cause. But yielding to the license given by General Order No. 38 (89 Fed. xiv, 32 C. C. A. xxxvii), that the several forms shall be observed and used with such alterations as may be necessary to suit the circumstances of any particular case and conforming to the practice in other districts, reluctantly and with constantly increasing regret, I allowed other and special pleadings to be framed, and now, as in this case, in almost every case there are demurrers, formidable answers after the manner of pleadings in chancery, with exceptions, replications, etc., until the practice has departed from the simple forms prescribed and degenerated into those of a suit in equity. I doubt if this is proper practice.

Here we are engaged in trying the question whether a certain creditor named by the debtor in his list as such is in fact a creditor, or whether his debt has been paid, and this on an issue of pleadings presenting that question, when the listed creditor joins in the petition for an adjudication; also whether another creditor, named in the list, has made a valid assignment of his debt to an outside person, who has likewise joined in the petition for bankruptcy; and again, whether still another creditor, likewise on the list, has joined in the petition in fact, or has been fraudulently overreached and misled into signing it—really the issue being whether or not his agreement to join should be rescinded for fraud and set aside by a court of equity. All this has the appearance to the court of a manipulation of creditors and a concerted scheme, on the one hand to defeat the main creditors of their use of the bankruptcy statute to vacate preferences, and on the other of a scheme to find the requisite number of creditors to invoke the statute.

The court is not now prepared to say that such proceedings are not admissible, but it very well may be said that a petitioning creditor, having a debt provable on the face of it, ought not to be compelled by the defendant debtor to enter into litigation about it, legal and equitable, and antecedently to establish it by overthrowing all the defenses, real or fabricated, that the debtor may choose to set up by pleadings specially framed to present such issues. It is in effect tantamount to holding that a creditor with a disputed debt cannot be a petitioning creditor in bankruptcy; or, at least, not until he has cleared away all dispute and controversy, and established his debt by a judgment at law; for it would be, in effect, a requirement to do this, even if he must get such a judgment or its equivalent in the bankruptcy proceedings. And the result is that before we can inquire whether a debtor is insolvent, and has committed an act of bankruptcy, we must engage in a preliminary work of litigation in law and equity, and, possibly, even in admiralty as well, with each petitioning creditor, in order that we may know beforehand whether the debtor has any defense he may possibly make to the creditor's claim of debt. This is converting the language of the statute, "three or more cred-

itors having provable claims," into a requirement that there shall be "three or more creditors having proved and established debts," before they may file the petition. Section 59b. If a debt is wholly wanting in existence, if it has been paid, for example, or if it has been fabricated for the purpose, of course the defendant should be allowed to show that fact in some form. But if it be a reasonably fair and honest claim of debt, which is provable in the sense that it is a claim that the court of bankruptcy after adjudication will hear and establish, if proved, the creditor should not be bound before the adjudication to so prove and establish it, but should be allowed to rely upon its provable quality, prima facie, to support an involuntary petition in bankruptcy. This certainly ought to be the rule; but here we are already engaged in a maze of trifling litigation, about trivial transactions, before we can get at larger transactions on their merits, for the investigation of which this particular and peculiar jurisdiction of bankruptcy was established. Our extraordinary, not to say unique, jurisdiction cannot be exercised until we have first exercised that of the ordinary justice of the peace, or of a law court and jury, or of the chancellor, or of the admiralty, to establish whether or not the creditor be a creditor in fact as against all possible defenses to his claim. I hardly think such was the intention of this act, but it is not essential here to enter upon any close investigation of the meaning of the words "provable claims," as used in section 59b, or in former bankruptcy statutes, nor how far the bankruptcy court will go in allowing litigation between the petitioning creditor and the debtor about the defenses there may be to the claim set up as a defense or obstruction to the proposed proceedings in bankruptcy; because, in this case, the pleadings first require a broader investigation into all of the alleged debts set up by the defendant debtor in his list of creditors so exhibited by him to show the fact that he has more than 12, and that therefore one creditor cannot sustain the petition. It may be that, after all, he has less than 12, and that his answer is not true in respect of that. We are engaged in ascertaining a mathematical fact by counting, excluding all spurious debts, and not in determining whether any particular debt be "provable."

Whether payment after petition filed be a good defense is doubtful, and that question is reserved for future consideration. Hilliard, Bk. (2d Ed.) 192, par. 30; Wms. Bk. 41.

The objection of the petitioning creditors that the defendant debtor's so-called "list of creditors," filed with his answer, is not a compliance with section 59d of the statute (30 Stat. 561, c. 541 [U. S. Comp. St. 1901, p. 3445]), is well taken. Certainly it is a "list of creditors," and verily complies with the mere words of the statute; but that is sticking in the bark of the statute. "Qui hæret in litera hæret in cortice. Broom's Leg. Max. 611. It is, however, more the fault of the statute than of the pleader. The statute sacrifices the advantage of explicit directions to a seeming infatuation for a structural compression of multum in parvo, nearly always leaving too much to implication and judicial guesswork. Under the English act, as soon as the petition is filed the debtor must exhibit a list of his creditors giving particulars of address, amounts, dates, and nature of securi-

ties, if any, etc. Wms. Bk. 59. The original act of 1867 had no occasion for such a list of creditors before adjudication, because the petition could be filed by one or more creditors, the aggregate amount of the debt or debts being $250. Act March 2, 1867, § 39, 14 Stat. 517, 536, c. 176. But by section 12 of the amendatory act of June 22, 1874 (18 Stat. 178, 180, c. 390), provision was made against trivial debts being used to sustain an involuntary petition, presumably to meet the experience had in that regard under the original act. But likewise and almost simultaneously the act of Congress known as the "Revised Statutes" was enacted, containing the title 61, in "Bankruptcy," sections 4972 to 5132, inclusive. Some confusion of interpretation arose by this circumstance not necessary to notice here particularly; but Rev. St. 5021, 5023, took no notice of this amendatory act of June 22, 1874, § 12 (18 Stat. 180, c. 390), and contained only the requirement of the original act that the adjudication might be made on the petition of one or more creditors whose debts aggregated as much as $250, and this section 12 of the act of 1874 does not appear in any of the supplements of the Revised Statutes, because the whole act was repealed before the first supplement was issued. It appears nowhere except in the Statutes at Large, as above cited. So that, possibly, the framers of the act of 1898 gave it no attention, regarding the Revised Statutes as a complete substitute, as it was; and, possibly, again, as never having had any force; or it may have been believed, as it was elsewhere in some of the text-books, that the amendatory act was incorporated in the second edition of the Revised Statutes, which is a mistake. Bump's ninth edition of his work on Bankruptcy, without authority substitutes this section 12 of the act of 1874 as section 5021 of the Revised Statutes; and his notes give the decisions under the amendatory sections, which he treats as repealing the corresponding sections of the Revised Statutes. Bump, Bky. (9th Ed.) 396 et seq. But all this was only the convenient work of the text-writer or compiler himself, and had no legislative sanction.

· This condition is noted here, so that it may be remarked that in the opinion of the court the failure of the act of July 1, 1898, § 59d, 30 Stat. 561, c. 541 [U. S. Comp. St. 1901, p. 3445], to use the same language in describing the kind of "list of his creditors" that is used in section 12 of the amendatory act of 1874, does not imply that any less full list is to be filed under the act of 1898 than was required under the amendatory act of 1874. The purpose of the list is the same, I should say precisely the same, under both acts, although the language expressing the purpose is less clear under the later than under the older act, owing, no doubt, to the structural compression before noticed. The language of the old act is:

"The court shall, if such allegation as to the number or amount of petitioning creditors be denied by the debtor, by a statement in writing to that effect, require him to file in court forthwith a full list of his creditors, with their places of residence and the sums due them respectively, and shall ascertain upon reasonable notice to the creditors whether one-fourth in number and one-third in amount thereof, as aforesaid, have petitioned that the debtor be adjudged a bankrupt. * * * And if it shall appear that such number and amount have not so petitioned, the court shall grant reasonable time * * * within which other creditors may join in such petition."

It may be remarked here that this is the very jurisdiction we are now exercising under the act of 1898, more specifically and satisfactorily declared. Obviously, upon a comparison of the two sections, the purpose of the list is the same, and just as obviously a bare list of names and addresses, without more, does not accomplish that purpose of informing the creditors, not only of the names, but of the nature of the debts, and, most of all, of their dates and amounts. Such a bare list as that filed here smacks of a concealment of those facts for the purpose of embarrassment of the petitioners. If any creditor in the list be barred by the statute of limitation, the petitioning creditors need not negotiate or solicit such helpers to join in the bankruptcy; or, if the debts in the list be not provable debts in bankruptcy, they need not be counted, and negotiating with those creditors would be useless also; and so, in many contingencies to be imagined, this full information is necessary to guide the creditors in their further proceedings. Clearly, therefore, at least the dates and amounts should be given; and, moreover, it is useful to know whether the debt be due by note, account, etc., and when due, whether secured or not; and all such particulars, as fully disclosed as they would be in the schedules after adjudication, would be most in accordance with the analogies of the practice under former statutes. I am of opinion that substantially these requirements should be implied from the language of section 59d and correlative clauses of the same section.

Hereafter, in the practice of this court, the debtor in making out such a list must give, as nearly as may be, the same fullness of information as is required in the Schedule A of Form No. 1 (89 Fed. xvi, 32 C. C. A. xl), although it need not be in same form; and, at the very least, in addition to the names and addresses, he must give the dates, when due, and amounts of the debts; whether due by note, account, or other form of contract; and the consideration thereof; whether secured or not, and how; and whether the debt was contracted jointly with others or only by the debtor himself. Such a practice here might have saved the reference which now we are compelled to grant in this case; for there can be no doubt that it is the duty of the court to ascertain the facts connected with alleged indebtedness before it can be allowed to defeat the one large creditor in an effort to resort to bankruptcy proceedings to set aside alleged fraudulent preferences for equally large amounts paid or secured to the favored creditors. That duty was especially enjoined by the above-cited section 12 of the amendatory statute of 1874, and it is necessarily implied in the corresponding section 59 of the act of July 1, 1898, 30 Stat. 561, c. 541 [U. S. Comp. St. 1901, p. 3445], which leaves so much to such implications, without which the statute would not be at all workable by the courts.

Another pertinent consideration arises out of a comparison of the two foregoing sections. By that of the act of 1874 it was provided that, "in computing the number of creditors as aforesaid, who shall join in such petition, creditors whose respective debts do not exceed two-hundred and fifty dollars shall not be reckoned. But if there be no creditors whose debts exceed said sum of two-hundred and fifty dollars, or if the requisite number of creditors holding debts exceeding

two-hundred and fifty dollars fail to sign the petition, the creditors having debts of a less amount shall be reckoned for the purpose aforesaid."

This act of 1874 was the precursor of the total repeal of the act of 1867, a few years later, in 1878 (Act June 7, 1878, 20 Stat. 99, c. 160). It was symptomatic of the widespread dissatisfaction with the practical workings of the original act, and a last effort to make it acceptable in its involuntary features. Costly bankruptcies, instituted by creditors with trivial debts, not amounting in the aggregate to more than $250, and very small in amounts due each creditor, were distasteful to public opinion, as being trifling with the process of the courts about matters not worthy of such attention. The foregoing provision of the amendatory act was a protest against such petty litigation, and yet, as will be observed, Congress was not quite willing to cut off small creditors altogether from the remedy by bankruptcy procedure. Later, disgust with the act for this and other reasons swept it off the statute book. The act of 1898 seems to tolerate voluntary and involuntary proceedings based on the smallest debts, but this history concerning the old act should warn those resorting to the new not to abuse it for petty litigation, even if thought to be permissible under it.

Here we have a creditor strenuously insisting on counting and using a debt for only 82 cents to sustain this petition, and, on the other hand, a debtor setting up trashy debts, not one of which is over $40, most of which are less than $5, it is said, and the whole not aggregating as much as $250, the smallest amount allowed by the old disrelished act of 1867. As intimated at the hearing, if the question turned wholly upon the small sum of 82 cents, I should treat it as clearly within the protecting maxim, "De minimis non curat lex." Broom's Leg. Max. 134. But counsel for the petitioning creditor, Gage & Co., forcibly contend that, if that maxim is to defeat a creditor with an indebtedness of over $8,000 from challenging the legality of transfers of property given to prefer other creditors for quite as large a value, it ought also to be turned the other way, and used to expunge from the count the petty debts set up by the defendant debtor, leaving him a debtor with less than 12 creditors, and so maintaining a petition by a single creditor with an amount large enough to command respect as against the maxim. It is also intimated that some of these creditors should be excluded from the count because they are stockholders in the bank that was preferred, and therefore interested in defeating the bankruptcy petition by unlawful concert with the debtor.

On the whole, I have concluded to send the case to a referee to inquire about these debts, and report all the information to be obtained on oath as to their amount, dates, consideration, etc., and the relation of the creditors to the debtor, the bank alleged to be preferred, and to this litigation. Counsel may agree upon the terms of the reference, all other matters being reserved.

Necessarily it is the practice in all courts to treat the attorney appearing for a litigant as duly authorized thereto by that litigant. The authority to appear must exist, to be sure, but it is conclusively presumed, or assumed, rather, by the court, unless it is formally, and by a special proceeding known to the practice, called in question. 3 Enc.

L. (2d Ed.) 349; Id. 375. The defendant cannot, by answer or plea, set up want of authority in the plaintiff's attorney, but he must make a rule upon him to show his authority, supported by affidavit as to the facts. Id. 377, citing Martin v. Walker, Abb. Adm. 579, Fed. Cas. No. 9,170; Howe v. Anderson (Ky. 1890) 14 S. W. 216; Hill v. Mendenhall, 21 Wall. 453, 22 L. Ed. 616. The reasons for this rule are well illustrated by this case. The courts could not conveniently do the business of litigation if either litigant could capriciously embody in his pleadings the collateral matter of the authority of the attorneys, respectively, to appear and file their pleadings. Every litigation would degenerate into a preliminary inquiry about the attorney's dealings with his client. Besides, as in this case, the attorney charged with the offense of fraudulently overreaching the party whom he assumes to represent would have no opportunity to make his defense against such grave charges, unless they are presented more directly against himself by such a rule as the practice requires.

But it is the province of the court when necessary, even of its own motion, to require the attorney to show his authority to appear for the litigant, and a rule is always granted when asked for by the adversary party, if the affidavit shows sufficient ground to question the authority. The rule asked for in this case, therefore, will be granted; but it should be answered promptly, and any issues of fact sent to the referee at the same time as the foregoing reference, so as to save the costs of too frequent references in the same case.

The rulings of this opinion which hereafter should govern the practice in this court are:

(1) The simple forms of bankruptcy practice found in the general orders and forms prescribed by the Supreme Court should be followed, and there should be no unnecessary departures by falling into a habit of using the more costly, prolix, and far less suitable forms of special pleadings and procedure used in chancery cases.

(2) The question is reserved whether or not a creditor having a provable debt, subsisting prima facie, can be required by special pleadings, tendered by the defendant debtor, to establish his claim against all defenses that may be set up, before he can be heard, as a petitioning creditor, to maintain an involuntary proceeding in bankruptcy.

(3) The "list of creditors" required of the defendant debtor by section 59d of the statute, when he sets up as a defense to a petition by a single creditor that the number of his creditors is more than twelve, must contain, besides the bare names and addresses of such creditors, at least a statement of the amount due each creditor, the date of the debt, when due, whether due by note or account or by some other form of contract, the consideration therefor, whether owed jointly with another, as partner or otherwise, and such full particulars as will enable the petitioning creditor to negotiate with others to join with him in the petition and save the necessity and cost of a reference to ascertain the facts. There should be no concealment of these particulars by the debtor in making such a defense.

(4) If the particulars of the debts contained in the list of creditors filed under section 59d, where it is alleged by debtor that his debts are more than 12 in number, are not disclosed in the answer of the defend-

ant, the court will, if necessary, refer the case to ascertain them, and thus settle any dispute between the parties concerning them.

(5) The authority of the attorney appearing for the petitioning creditors cannot be challenged by the answer of the defendant debtor setting up a want of such authority, or averring any fraud of the attorney in procuring other creditors to join in the petition. This can only be done by a rule upon the attorney to show by what authority he appears for the party, supported by affidavit showing the facts relied on to question the authority.

(6) Whether payment of the debt of one of the petitioning creditors after the petition is filed will defeat the proceeding for lack of a sufficient number of creditors joining in the petition, quære.

(7) Whether trivial debts for petty amounts will be reckoned in either maintaining a petition or defeating it for want of the required number joining the petition, or whether the maxim, "De minimis non curat lex," will be applied to both sides, is a question reserved until the coming in of the report of the referee showing the true condition of the debts and the relation of the creditors to the litigation about the alleged preferences.

There will be an order of reference in accordance with the ruling above set forth. Ordered accordingly.

NOTE. After the filing of the foregoing opinion and the coming in of the report of the referee, the litigation was settled by the payment of one-half of the petitioning creditor's debt. Whereupon the petition was dismissed after publication for creditors to show cause against the application of the creditor to dismiss the petition.