NORTH AMERICAN FACTORS CORP., Respondent, *v.* MOTTY EITINGON, INC., et al., Appellants.

VAN VOORHIS, J. (dissenting). The first and second causes of action ought to be dismissed against the corporate defendant Motty Eitingon, Inc. It is neces-

sary to refer, in this connection, to some of the salient facts alleged in the first two causes of action in the complaint. Motty Eitingon, Inc., is and was at the times mentioned in the complaint engaged in the business of manufacturing and selling mouton skins, the demand for which exceeded the supply. Having insufficient working capital for the purpose, this corporation contracted to sell $12,000,000 of such skins. In an endeavor to float so large an undertaking, Motty Eitingon, Inc., and certain of its officers, stockholders or directors (described as the individual Eitingon defendants) obtained promissory notes from certain customers before their orders were filled by delivery to them of the manufactured mouton skins, which notes were discounted by plaintiff's assignors. The complaint alleges that these notes were given by the makers subject to an understanding that they would not be negotiated by Motty Eitingon, Inc., and would be surrendered against payment by check upon delivery of the mouton skins to the makers, or that they would be renewed if they matured before the skins were ready. In violation of this understanding, it is charged that Motty Eitingon, Inc., transferred these notes before maturity, for value and without notice, to Fur Trade Factors, Inc., and Fur Trade Commercial Corp., which assigned them to plaintiff. These notes are alleged to have been indorsed without recourse, but to have been transferred with the representation by Motty Eitingon, Inc., and the individual Eitingon defendants that the merchandise had been delivered to the makers of the notes. Motty Eitingon, Inc., became insolvent and filed a petition in bankruptcy. Before adjudication, a plan was arranged to enable it to continue in business under an extension of time by its creditors, but this plan was abandoned and said corporation was adjudicated bankrupt. The bankruptcy proceedings resulted in an arrangement confirmed by the bankruptcy court under article XI (U. S. Code, tit. 11, §§ 621–628) whereby the creditors, including this plaintiff, accepted debentures and preferred stock of the debtor corporation, which was thereby enabled to continue in business. By stipulation of the parties, the text of this arrangement is before the court with the same effect as though it were fully set forth in the complaint. Except to the extent that plaintiff has been paid by defendants Jaglom and Manhattan Mouton, Inc., it has received the face amount of its claim in fifteen-year debenture bonds and preferred stock of Motty Eitingon, Inc., pursuant to said plan. The bankruptcy thus resulted in a readjustment rather than a reorganization of Motty Eitingon, Inc., which continues in business under the arrangement worked out and approved in the bankruptcy court. Plaintiff in this action asserts the right to disregard its receipt of these long term debentures and redeemable preferred stock, and to sue Motty Eitingon, Inc., at once for their full face amount by demanding damages measured by the exact sum which they represent, without waiting until their maturity or redemption dates. Plaintiff's theory is that these securities were given in satisfaction of its contract claim against Motty Eitingon, Inc., but that they bear no relation (except, perhaps, as collateral) to plaintiff's claim to recover the identical amount upon the ground of fraud. If this action can be maintained against Motty Eitingon, Inc., the effect will be to nullify the arrangement effectuated with so much care in the bankruptcy proceedings, and approved by the bankruptcy court, with consequent damage to other creditors.

The correct manner in which to resolve this controversy seems to me to be to dismiss the complaint against Motty Eitingon, Inc., upon its motion, but to allow the action to proceed to trial against the individual Eitingon defendants. Such an outcome is indicated by the circumstance that the indorsement by Motty Eitingon, Inc., of the negotiable paper in suit to plaintiff's assignors,

although without recourse, became subject to a warranty imposed by section 115 of the Negotiable Instruments Law that the indorser had "no knowledge of any fact which would impair the validity of the instrument or render it valueless." If the allegations of the complaint be true, as we are required to assume in considering the present appeals, these instruments were invalid or valueless due to the agreement by Motty Eitingon, Inc., with the makers that the notes were not to be paid unless and until the manufactured mouton skins were delivered. Plaintiff's claim for breach of this warranty was clearly a provable contractual debt in the bankruptcy proceedings. Moreover, save for its acceptance of the bankrupt's debentures and preferred stock under the plan of readjustment, plaintiff could have participated in a liquidation of assets of the bankrupt, without being prevented by a discharge in bankruptcy from afterwards suing the bankrupt for the unpaid balance on the ground of the alleged fraudulent misrepresentation that the skins had been delivered when the notes were made (*Friend* v. *Talcott*, 228 U. S. 27). Upon the other hand, having accepted securities of Motty Eitingon, Inc., pursuant to the arrangement, for the full unpaid dollar balance of the claim, these debentures and the preferred stock accompanying them must be construed as having been taken in satisfaction of whatever obligation rested upon that corporation to recompense plaintiff's assignors for having discounted these notes (*Jacobs* v. *Fensterstock*, 236 N. Y. 39; *Matter of Mirkus*, 289 F. 732). Even if the debentures and preferred stock were to be regarded as having been given merely as collateral to a liability in fraud as plaintiff contends (no evidentiary facts support an assumption that such was the intention, notwithstanding that the plan approved by the bankruptcy court shows that the facts demonstrating the falsity of the alleged misrepresentations were disclosed), nevertheless the established rule is that under such circumstances suit cannot be begun upon the principal debt until the maturity of the debentures and retirement dates of the preferred stock, which in that event would be regarded as an expression of the principal indebtedness without superseding it. In *Jagger Iron Co.* v. *Walker* (76 N. Y. 521, 524), in discussing the question whether a debtor's note merges or extinguishes the demand for which it is taken, the Court of Appeals said: "The operation of such a note, is, to extend the time of payment until the note becomes due. If it be not paid then, the creditor may sue upon the original demand, and bring the note into court, to be given up on the trial; (*Muldon* v. *Whitlock*, 1 Cow., 290.)" This court followed the *Jagger* case in *Industrial Bank of Commerce* v. *Shapiro* (276 App. Div. 370, affd. 302 N. Y. 566). (See, also, *Matter of Nachman Co.*, 6 F. 2d 427.)

The individual Eitingon defendants are in a different category. They are charged with having been joint tort-feasors with Motty Eitingon, Inc., in the negotiation of these instruments to plaintiff's assignors and, if the allegations of the complaint be true, they therefore became liable jointly and severally with Motty Eitingon, Inc., for damages arising from the fraud. Unlike said corporation, however, they have not received debentures or any other form of payment as an expression or in satisfaction of their liability. The difference between their position and that of Motty Eitingon, Inc., is substantial. Even if, as plaintiff alleges, the debentures and preferred stock which it holds of Motty Eitingon, Inc., be worth but 7% of the otherwise unpaid balance of plaintiff's claim, the object of the readjustment in the bankruptcy proceedings was to give to all of the creditors, including plaintiff, in equitable proportion, as much as the bankrupt corporation was in position to provide by devoting all of its assets to that purpose. The object of the approved plan was to postpone the bankrupt's obligations to plaintiff and to its other creditors in order to enable it, if

possible, to make good to them over an extended period by taking advantage of the admittedly large market for mouton skins. It could not have been the thought of the bankruptcy court, nor of any of the creditors, including plaintiff (unless plaintiff were guilty of bad faith) that any of them could, immediately after confirmation of the plan, alter their positions and obtain preferences at the expense of other creditors, in violation of the spirit of section 60 of the Bankruptcy Act (U. S. Code, tit. 11, § 96) and of section 15 of the New York State Stock Corporation Law, by suing to recover by reason of the discount of the same commercial paper which the arrangement in the bankruptcy court had been at pains to postpone. The effect would be to take the business away from the other creditors, who have postponed their claims by acceding to the plan, and to transfer it to plaintiff by a sale under execution on the judgment which plaintiff hopes to obtain.

In order to avoid that consequence, it is not necessary to hold that the distribution to creditors under the bankruptcy arrangement constituted full payment to plaintiff of its loss. If the debentures and preferred stock received by plaintiff be actually worth but 7% of the unpaid balance upon these notes, there is no reason on account of which the individual Eitingon defendants should be exonerated from making good the difference, if they participated in the alleged fraud. That is quite a different proposition from determining that the intention of the arrangement approved by the bankruptcy court was that plaintiff should accept securities of the bankrupt in satisfaction of all liability of the bankrupt by reason of the discount of the notes by plaintiff's assignors, or by way of postponement of the enforcement of such liability against it.

The order appealed from by defendant Motty Eitingon, Inc., as resettled on May 8, 1951, denying the motion of said defendant to dismiss the complaint against it should be reversed, with $20 costs and disbursements to appellant, and said motion granted, with costs.

On first appeal: Peck, P. J., Glennon and Shientag, JJ., concur in decision; Van Voorhis, J., dissents in opinion in which Callahan, J., concurs.

On second appeal: Peck, P. J., Glennon, Callahan, Van Voorhis and Shientag, JJ., concur in decision.

On third appeal: Peck, P. J., Glennon, Callahan and Van Voorhis, JJ., concur in decision; Shientag, J., dissents in part and votes to affirm the denial of the motion to dismiss the complaint made upon the ground that the claim sued on had been released in the following memorandum: If there is any ambiguity in the release drafted by the appellants, such ambiguity should be resolved against them. The scope of the special release should be left for the trial and should not be determined summarily on a motion to dismiss (*Whittemore* v. *Judd Linseed & Sperm Oil Co.*, 124 N. Y. 565, 574).

On first appeal: Order affirmed, with $10 costs and disbursements to respondent, payable by defendant-appellant Motty Eitingon, Inc. It may be, under the circumstances and conditions, that plaintiff's assignors accepted securities in the bankruptcy reorganization, that the contemplation was or effect should be that drawn by the dissenting opinion. We think, however, that such determination may not be made as a matter of law on the face of the complaint. Settle order on notice. On second appeal: Order entered in the Supreme Court, New York County, on May 8, 1951, resettling an order entered in said court on March 30, 1951, denying the motion of defendants Motty Eitingon, Solomon Eitingon, Leon Eitingon, Naum Eitingon and Arthur Kramer to dismiss the complaint, unanimously affirmed, with $10 costs and disbursements to respondent. Settle order on notice. On third appeal: Order entered in the Supreme

Court, New York County, on May 8, 1951, resettling an order entered in said court on March 30, 1951, denying the motion of defendants Manhattan Mouton, Inc., Edwin H. Jaglom, Abraham Jaglom and Simon Jaglom to dismiss the complaint as to them, modified by granting the motion insofar as to dismiss the third cause of action against Manhattan Mouton, Inc., on the ground of release and, as so modified, affirmed, with $10 costs and disbursements to Manhattan Mouton, Inc., against respondent and with $10 costs and disbursements to respondent against the other appellants. Settle order on notice. [See *post*, p. 867.]