In the Matter of GIBRALTOR AMUSE-MENTS, LTD., Bankrupt.

No. 60–B–161.

United States District Court
E. D. New York.

Oct. 21, 1960.

---

Chadbourne, Parke, Whiteside & Wolff, New York City, for The Wurlitzer Company and Wurlitzer Acceptance Corporation, Petitioning Creditors; Edward R. Neaher, New York City, of counsel.

George Becker, New York City, for bankrupt.

BARTELS, District Judge.

This is a petition by Gibraltor Amusements, Ltd. for review under Section 39 sub. c, of the Bankruptcy Act, 11 U.S.C. A. § 67, sub. c, of the Referee's Order of August 19, 1960, adjudicating Gibraltor a bankrupt. The Order was based upon the Referee's well reasoned decision dated August 15, 1960, in which after careful consideration of the qualifications of the petitioning creditors, he concluded that:

"I find that on March 18, 1960, the four petitioning creditors had provable claims against the alleged bankrupt for the amount set forth above, which claims were and are liquidated as to amount, and are not contingent as to liability, which aggregated in excess of the value of securities held by Wurlitzer and WAC in a sum far in excess of the statutory amount of $500.; and that at the time of the bankruptcy the alleged bankrupt was insolvent, had committed the acts of bankruptcy as alleged in the amended petition, and had debts owing to creditors far in excess of the statutory amount of $1000.

"Upon the pleadings herein, the record of the trial and the foregoing findings of fact, I am of the opinion that the petitioning creditors are entitled to an order and decree adjudging the alleged bankrupt as a bankrupt. (Section 18 Bankruptcy Act, Title 11 U.S.C. 41)."

Gibraltor claims error in the Referee's determination in that (a) the petitioning creditor, The Wurlitzer Company ("Wurlitzer") and the intervening creditors failed to sustain the burden of proof cast upon them by law, and (b) Wurlitzer and the intervening creditors were not

qualified to act as petitioning creditors under the Bankruptcy Act.

■ Upon such a review this Court is subjected to the restraint of General Order 47 (11 U.S.C.A., following section 53) which provides that "The judge shall accept his [the Referee's] findings of fact unless clearly erroneous." Margolis v. Nazareth Fair Grounds & Farmers Mkt. Inc., 2 Cir., 1957, 249 F.2d 221, 223. The involuntary petition against Gibraltor was filed on March 18, 1960, to which Gibraltor filed its answer on March 29, 1960; leave was granted to Wurlitzer to file an amended petition on May 6, 1960, and on May 5 and May 6, 1960 the intervening creditors were permitted to intervene upon separate petitions, and thereafter on May 13, 1960 Gibraltor filed its answer to the amended petition. In his decision the Referee set forth the history of the case and outlined Gibraltor's contentions and the facts upon which his decision rested, all of which is unnecessary for this Court to repeat. The real issues before the Referee were the qualification of Wurlitzer as a petitioning creditor and the qualifications of Wurlitzer Acceptance Corporation ("WAC"), William .F. Wadsworth and Joseph Rae as intervening petitioning creditors. The petitions will be considered seriatim. In reaching his conclusion the Referee correctly decided certain peripheral issues which it is unnecessary to discuss upon this review.

### Wurlitzer

Gibraltor claims that Wurlitzer filed a sham petition in that it was prepared on the basis that Gibraltor had less than twelve creditors when, as a matter of fact, Wurlitzer knew otherwise and so prepared the petition with a view of later supporting the same by intervention of other creditors. It further claims that Wurlitzer received a fraudulent and voidable preference which it failed to surrender and for these reasons it was disqualified.

■ The Referee did not specifically rule on the claim of sham because it was not raised before him. However, all the evidence was before him and implicit in his finding that Wurlitzer had a provable claim is the fact that the petition was not based upon sham. While it was subsequently established that Gibraltor had twelve or more creditors at the time the petition was filed, there is nothing in the record indicating that Wurlitzer knew that Gibraltor had that number of creditors at that time. In fact, on September 11, 1959, a vice-president of Gibraltor (Alexander Goldberg) certified that as of that date Gibraltor had no creditors except Wurlitzer. Although Gibraltor raises the question whether Wurlitzer had a right to rely on this statement either at that time or subsequently, such statement nevertheless cannot be used as a basis for charging Wurlitzer with fraud as alleged by Gibraltor. Wurlitzer was not guilty of planned sham in filing its petition and the Court finds that there is no substance in this claim.

■■ Referring to the second portion of Gibraltor's claim, the Court is of the opinion that the Referee's finding is based upon the evidence and the law. A substantial part of the indebtedness owed to Wurlitzer by Gibraltor consisted of promissory notes in default secured by conditional bills of sale and in some instances by chattel mortgages. It is unnecessary to examine the details of Gibraltor's claim that Wurlitzer received preferential payments or transfers. Section 1, subdivision (11) of the Bankruptcy Act, 11 U.S.C.A. § 1(11), sets forth the definition of a creditor, and Section 59, sub. b of the Act, 11 U.S.C.A. § 95, sub. b, sets forth the qualifications of petitioning creditors who have provable claims. Under the latter section three or more creditors with provable claims "liquidated as to amount and not contingent as to liability against any person which amount in the aggregate in excess of the value of securities held by them, if any, to $500 or over" may file a petition to have the debtor adjudicated a bankrupt. Assuming Wurlitzer were a secured creditor, this circuit has made it clear that Wurlitzer would not be disqualified by reason of this fact al-

though its claim might not be allowed until the preference was surrendered. In re Automatic Typewriter & Service Co., 2 Cir., 1921, 271 F. 1, 3; Winkleman v. Ogami, 9 Cir., 1941, 123 F.2d 78. The Referee found that Wurlitzer was an unsecured creditor for a sum far in excess of $500 and with this conclusion the Court agrees. Wurlitzer was therefore not disqualified because it was a secured creditor or received a preferential payment. In re Wm. J. Braun Builders, Inc., 6 Cir., 1958, 262 F.2d 107.

### Wurlitzer Acceptance Corporation ("WAC")

WAC, a Delaware corporation and wholly owned subsidiary of Wurlitzer, was formed for the purpose of financing the sales of Wurlitzer's products sold by the stores owned and operated by Wurlitzer as well as those sold by Wurlitzer's dealers, distributors and operators. According to its balance sheet as of March 31, 1960, it had assets, made profits, was obligated on notes payable to banks and accounts payable to Wurlitzer and paid Federal income taxes.

WAC's claim against Gibraltor is based upon two notes originally sold by Wurlitzer's New York distributor to Wurlitzer and subsequently assigned by Wurlitzer to WAC without recourse. One of the notes was executed by Phillip G. Hardy, dated April 29, 1958, in the amount of $6,238., and the other note was executed by Hewlett Vending Co., dated October 13, 1958, in the amount of $10,440. Both notes covered the purchase of Wurlitzer's juke boxes or phonographs from its New York distributor, secured by conditional bills of sale, and both were endorsed by the New York distributor to Wurlitzer which, in turn, assigned them to WAC for cash. On the date the petition was filed both of these notes were in default.

On May 15, 1959 Gibraltor executed and delivered a written guaranty of payment to Wurlitzer of all obligations of its New York distributor, which included the obligations of the distributor as endorser upon the notes above mentioned.

The guaranty extended to Wurlitzer and to "its successors and assigns".

WAC's claim as a creditor has been challenged on a number of grounds, some of which need little discussion. For instance, the objection to the claim upon the ground that the notes were purchased by WAC without recourse is fictitious because there can now be little doubt that such an endorsement transfers title to the note or obligation. Craig v. Parkis, 1869, 40 N.Y. 181, 185; North American Factors Corp. v. Motty Eitingon, Inc., Sup.1951, 105 N.Y.S.2d 250, affirmed 1951, 279 App.Div. 719, 108 N.Y.S.2d 338, affirmed 1953, 304 N.Y. 901, 110 N.E.2d 733. Moreover, based upon the wording of the guaranty, the assignment by Wurlitzer to WAC of the distributor's notes and obligations carried with it the guaranty by Gibraltor to Wurlitzer of the payment of all such notes and obligations, thus placing WAC as assignee in the position to assert a claim against Gibraltor upon such guaranty. General Phoenix Corp. v. Cabot, 1949, 300 N.Y. 87, 89 N.E.2d 238. Similarly, liability on a guaranty is a noncontingent liquidated debt provable in bankruptcy (Maynard v. Elliott, 1931, 283 U.S. 273, 51 S.Ct. 390, 75 L.Ed. 1028; In re Rechtman, D.C.N.Y.1935, 11 F. Supp. 347) and WAC is not disqualified as a petitioning creditor because it holds security for the notes (Winkleman v. Ogami, supra; In re Automatic Typewriter & Service Co., supra) or because others liable on the defaulted notes may not have been called upon to pay the obligations. See, In re Mann, D.C.Md. 1952, 117 F.Supp. 511; Bibb Mfg. Co. v. Pope, D.C.N.Y.1925, 22 F.2d 557, affirmed per curiam 2 Cir., 1927, 22 F. 2d 558; Loeser v. Alexander, 6 Cir., 1910, 176 F. 265.

Gibraltor's objection to WAC's qualification as a petitioning creditor is in essence based upon the fact that WAC is a subsidiary of Wurlitzer, the theory being that WAC's claim is not a separate claim but is in substance a part of Wurlitzer's claim. Gibraltor emphasizes the fact that Wurlitzer acted as collect-

ing agency for WAC and that there was no privity between WAC and Gibraltor. This is simply another way of saying that the two corporations acted as one. At the outset it should be observed that there is nothing in the Bankruptcy Act or the authorities which *per se* prohibits a parent corporation and a subsidiary corporation from filing two separate claims against the bankrupt if they are in fact separate entities. It has been held that a parent corporation may place a subsidiary in involuntary bankruptcy (In re H. Hicks & Son, Inc., D.C.N.Y. 1935, 10 F.Supp. 684, affirmed 2 Cir., 1935, 82 F.2d 277) and also recover its full claim from a bankrupt subsidiary in reorganization proceedings (Comstock v. Group of Institutional Investors, 1948, 335 U.S. 211, 68 S.Ct. 1454, 92 L.Ed. 1911). Therefore, to sustain Gibraltor's challenge in this respect would require the Court to pierce the corporate veil of WAC and treat Wurlitzer and WAC as one corporate entity. The courts are reluctant to do this without proof that the parent corporation employed the subsidiary for an illegal or wrongful purpose or simply used the subsidiary as a front or cloak to accomplish an illegal end or to perpetrate an injustice or fraud (Rapid Transit Subway Construction Co. v. City of New York, 1932, 259 N.Y. 472, 182 N.E. 145; Jenkins v. Moyse, 1930, 254 N.Y. 319, 172 N.E. 521, 74 A.L.R. 205; In re Belt-Modes, Inc., D.C.N.Y. 1950, 88 F.Supp. 141; Buechner v. Farbenfabriken Bayer Aktiengesellschaft, Del.1959, 154 A.2d 684) or to evade or avoid its public duty or obligation. United States v. Morris & Essex R. Co., 2 Cir., 1943, 135 F.2d 711, 713. There is no such proof in this case. The formation of WAC was for an obvious legal purpose frequently resorted to by other corporations for business reasons and its separate entity was supported by its separate operations, assets and obligations. Here the association was free from guilt and the record is devoid of any evidence which would justify the Court in disregarding WAC's separate entity. It was therefore a qualified petitioner.

### William F. Wadsworth

Wadsworth was an employee of the bankrupt whose claim is for unpaid wages due him in the sum of $125. Gibraltor contends that $400 paid to Wadsworth while he was incapacitated for a period of ten weeks due to an accident, was a loan and converted Wadsworth from a creditor to a debtor to the extent of $275. The Referee found, and the evidence supports the finding, that the payment was in lieu of Workmen's Compensation and that Wadsworth has a provable claim for unpaid wages and was qualified to act as a petitioning creditor.

### Joseph Rae

Rae's claim is based upon the purchase by him and his partner Weintraub of certain locations and Wurlitzer's phonographs from Sandy Moore Distributors Corp. and Sandy Moore individually in September, 1959. He claims that the latter two were acting as agents for Gibraltor, an undisclosed principal, and that he delivered to the agents notes in the amount of $8,400. The bill of sale listed the names and addresses of four locations and the serial numbers of juke boxes which had already been listed by serial numbers as the property of Gibraltor in a chattel mortgage previously delivered to Wurlitzer by Gibraltor. The notes were negotiated to Moore's brother-in-law Kerner, or to his corporation, SAK Trading Corporation. In November, 1959 Rae was sued on the notes although delivery of the locations and equipment was never made by the sellers to Rae. A settlement was then concluded whereby Rae and Moore apparently cancelled the purchase arrangement and Rae received back his notes but Moore refused to deliver them until after he endorsed his partner's notes. According to Rae's testimony, "from that point Sandy Moore took care of the payments of these notes because I and my partner did not make any further payments, or

any payments, to be exact * * * " (R. 394). This presents a rather unique situation because there seems to be no reason for the endorsement by Rae.

In order to qualify as a petitioning creditor Rae's claim must not only be provable but it must be "liquidated as to amount and not contingent as to liability". Sec. 59 Bankruptcy Act, 11 U.S.C.A. § 95. If Sandy Moore and/or Sandy Moore Distributors Corp. were acting as agents for Gibraltor as an undisclosed principal, then Rae would have a provable claim in the sense that it is a reasonably fair and honest claim which a court of bankruptcy will hear. Such a claim may or may not be allowable dependent upon the proof adduced to establish it. W. A. Gage & Co. v. Bell, D.C. Tenn.1903, 124 F. 371, 376; Shapiro v. Lubasch, 1945, 186 Misc. 182, 58 N.Y.S. 2d 695. There is no question that the claim is "liquidated as to amount" (In re Silver, D.C.Ill.1953, 109 F.Supp. 200, 203–204, affirmed 7 Cir., 1953, 204 F.2d 259), the only question being whether the claim is "contingent as to liability", which depends on whether an act or event must occur before liability accrues. In re State Realty Co. of Boston, D.C.Mass. 1955, 131 F.Supp. 554, 556 affirmed sub nom, MacNeil v. State Realty Co. of Boston, 1 Cir., 1956, 229 F.2d 358. Under the present state of the record, Rae is liable as endorser on his partner's notes, both Moore and Gibraltor as the undisclosed principal probably remaining liable to Rae under what vaguely appears to be an indemnity arrangement. At all events Rae's liability as endorser was contingent on his partner's default and if there were an indemnity arrangement, on default of Moore and Gibraltor. The record is silent as to whether or not there was any default on the notes either by Rae's partner or the indemnitors or whether or not the holder of the note had complied with the usual conditions precedent with respect to presentment, demand and notice, or that such requirement had been expressly waived. In re Mann, supra. Without a showing that these contingencies had been satisfied,

Rae would not qualify as a petitioning creditor. In this posture the case would ordinarily be remanded to the Referee for further testimony but inasmuch as the other three creditors have fully qualified as petitioning creditors, such action will be unnecessary. On the present state of the record, the Court cannot find that Rae was a qualified petitioner. Gibraltor also points out that after Rae filed his petition a settlement was effected pursuant to which he received back his endorsed note. This would not affect Rae's status, however, since once the petition was filed the Court obtained jurisdiction and subsequent payment of the claim is immaterial. Reed v. Thornton, 9 Cir., 1930, 43 F.2d 813.