**In re R. N. SALEM CORPORATION previously known as AA Garage Doors, Inc., Wayne Doors of Cincinnati, Inc. also doing business as AA Door Company, Wayne Door Company, AA Garage Door Company, AA Window Company, AA Garage Door of Dayton affiliated with AA Auto Service, Inc., Debtor.**

**Bankruptcy No. 1–82–02389.**

United States Bankruptcy Court, S. D. Ohio, W. D.

Oct. 5, 1982.

Louis F. Solimine, George K. Fogg, Paxton & Seasongood, Cincinnati, Ohio, for Wayne Dalton.

R. Edward Tepe, Thomas R. Yocum, Benjamin, Faulkner, Tepe & Sack, Cincinnati, Ohio, for alleged debtor.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

This case involves an involuntary petition filed August 20, 1982 pursuant to 11 U.S.C. § 303, seeking that debtor be adjudicated a debtor under Chapter 7 of the Bankruptcy Code. The business of debtor is the fabrication and sale of automatic garage doors. The petition as filed purports to comply with § 303(b)(1) in that it is signed by three entities having aggregate claims in excess of $5,000.00. Debtor filed an answer to the petition contesting the allegations of the petition that the threshold requirement of § 303(b)(1) is met as to three creditors with an aggregate in claims exceeding $5,000.00, and setting forth several affirmative defenses relating to the same issue. In addition, the answer puts into issue the crucial requirement stated at § 303(h)(1), that the debtor is generally not paying such debtor's debts as such debts become due. The caption of the case as originally filed concludes with the following:

"... affiliated with AA Auto Service, Inc."

It was agreed in open court by counsel for petitioning creditors that this language be deleted from the caption and it is so ORDERED.

To support its burden at the trial petitioners presented representatives of each of the petitioning creditors. On behalf of Telectron, Inc., William Foster, an officer of that corporation was called. The business of Telectron is the manufacture of electronic garage door openers, and Telectron has been doing business with debtor since March 1981. The current balance of the Salem account with Telectron is somewhat in excess of $6700.00. Foster did agree that in April 1982 an agreement was reached with the debtor that the account would be paid at the rate of $1,000.00 per month. Payments at the rate of $1,000.00 per month were received in June, July and August. It is a fair inference from Foster's testimony, that Electron joined the petition upon the solicitation of Wayne Dalton, one of the other petitioning creditors.

The representative of petitioning creditor Glass City Spring Corp. who testified was Nick Ruggiero, President of Glass City. The business of Glass City is the manufacture of springs for the garage door industry. Debtor is a customer of Glass City. Ruggiero testified that on the date of the filing of the petition, debtor owed Glass City the amount of $515.60 for goods shipped. The terms of sale by Glass City to debtor were 1% discount if paid within 10 days, net if paid within 30 days. The $515.60 amount was composed of two separate invoices. One invoice was dated July 20, 1982 and the other July 27, 1982, so that they were due respectively August 20, 1982 and August 27, 1982. The July 20, 1982 invoice was paid, and credited by Glass City on September 3, 1982. A check on account of the second invoice was sent, but returned because it was improperly addressed. The envelope containing the misdirected check was post-marked August 22, 1982. The check contained in the envelope was tendered to Glass City a few days prior to the

trial and also at the trial. Again, Glass City joined as a petitioning creditor upon the solicitation of Wayne Dalton. Ruggerio also testified that Wayne Mullet is an officer of Wayne Dalton. Another employee of Wayne Dalton is Jeff Miller. There are ten shareholders of Glass City. Mullet and Miller are among them, and several are related to Mullet, though Ruggerio did not know how many. Furthermore, about half the business of Glass City is done with Wayne Dalton, something in the neighborhood of $500,000.00 in sales per year.

Roger Murphy, an officer of Wayne Dalton, was called to testify on behalf of that petitioning creditor. Wayne Dalton is a manufacturer of doors which it supplies to debtor, and debtor has been its largest customer in the Cincinnati market. Debtor and Wayne Dalton have done business on a consignment basis, the manner of conducting this business being as follows. A warehouse was set up in Cincinnati to which Wayne Dalton shipped goods. A representative of Wayne Dalton would take a monthly physical inventory at the warehouse and this provided the basis for the billing by Wayne Dalton of debtor. Payment was due 30 days after the end of the month. There is reference to the payments under this arrangement by debtor as usage payments. Usage payments were missed in late 1980 and negotiations were undertaken to make up the missed payments. Murphy testified that the present claim of Wayne Dalton against debtor for goods shipped for which payment had not been received as $396,818.62. Payments were made to debtor during 1981 amounting to $147,959.93. Payments by debtor to Wayne Dalton between January and July 1982 total $105,556.52. Murphy testified that in an account of this size there are continuous credit problems. He testified further that in early 1982 debtor was put on a C.O.D. basis.

While not part of the case in chief of petitioning creditors, evidence regarding the relationship between Wayne Dalton and debtor adduced upon the testimony of R. N. Salem, president of debtor, in the debtor's case will be referred to here. Salem testified that Wayne Dalton is a secured creditor of debtor. It has a first mortgage on inventory, machinery, and equipment as well as accounts receivable. He valued these items at $288,000.00 total. In addition he testified that Wayne Dalton had a second mortgage on certain real estate which Salem valued at approximately $450,000.00, and he stated that the amount of the first mortgage was approximately $143,000.00. The fact is that the real estate is personally owned by Salem. In addition to having the first mortgage on inventory, machinery, equipment, and accounts receivable referred to above, Salem had personally guaranteed the obligation of debtor to Wayne Dalton, and the second mortgage referred to was collateral for that personal guarantee. Salem also testified that his personal net worth was in excess of some $600,000.00. In addition, Salem testified at length about the several controversies between debtor and Wayne Dalton representing significant areas of dispute which bears on the amount of the indebtedness of debtor to Wayne Dalton. We will not detail this testimony, but are satisfied that there are some genuine areas of dispute about the claim and this is the reason it is not being paid. Salem testified that without question, some amount was owed by debtor to Wayne Dalton.

We turn now to the evidence bearing on the burden of the petitioning creditors to show that the debtor is generally not paying its debts as they become due. For this purpose, plaintiff called an expert witness, Edward L. Cromer, a partner of Price-Waterhouse, a well known accounting firm, who had been retained by the petitioning creditors to do a review of the affairs of the debtor. In order to prepare himself to testify Cromer conducted a study of aging of the accounts payable of debtor for the months, June, July, and August of 1982. As a result of his study, Cromer testified that 90% of the total accounts payable of debtor were more than 90 days overdue. It was his opinion, based upon this fact, that 90% of the accounts payable of the debtor were past due, and that debtor was generally not paying its debts as they came due.

On cross examination, Cromer testified that prior to reaching his opinion, he had not been made aware of any disputes regarding the Wayne Dalton debt, nor as to any other debt. Further, he had no information as to credits which might be claimed by debtor against any creditor. He was unaware of any side agreements as to terms and manner of payment to any particular creditor by the debtor. On this score, Salem testified in debtor's case that there were several side agreements with creditors regarding terms of payment other than appear on the invoices.

■ At the conclusion of the case of petitioning creditors, the debtor moved to dismiss. Debtor contended that petitioning creditors had failed to sustain the burden required of them in regard to proving that the claims of the three creditors required under § 303(b)(1) aggregated:

"... at least $5,000.00 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;"

In this regard it was the position of debtor that to sustain this burden petitioning creditors must prove that the total of the claims of the three petitioning creditors exceeded by at least $5,000.00 the total of the liens held by the petitioning creditors. Further, debtor contended that Wayne Dalton was not qualified as a petitioning creditor because its claim was disputed. Moreover debtor argued that Glass City should not be regarded as a separate entity because individuals with some affiliation to Wayne Dalton sat on the board of Glass City. Further, Glass City was not qualified as a petitioning creditor because its debt was not due on the date of the petition. As to petitioning creditor Telectron, debtor argued that debtor and this creditor had entered into an accord and satisfaction which should estop Telectron from participating in this case. (Debtor also contended that Wayne Dalton was a secured creditor, and secured creditors were not qualified as petitioning creditors in an involuntary case. Because evidence on this point did not emerge in the case of petitioning creditors

it cannot be considered upon the motion to dismiss.) Finally debtor argued that petitioning creditors had failed to sustain their burden with respect to payment of debts as they became due. Debtor's argument in this regard was that the Wayne Dalton debt was not paid because it was disputed, and apart from the debt to Wayne Dalton, some $15,000.00 in debt (see PX 11) was past due. This says debtor, is surely a negligible amount in view of total cash flow through debtor in the magnitude of a million dollars. We reserved decision on debtor's motion.

Debtor then proceeded with its case, it consisted almost entirely of the testimony of Salem, though debtor did recall Mr. Cromer briefly. The thrust of Salem's testimony was to present in detail the subjects of dispute between debtor and Wayne Dalton, a matter to which we adverted earlier in this decision. He testified also that Wayne Dalton held ample security both as to the assets of debtor as well as the personal guarantee and net worth of Salem for any amount owed it.

■ On this record we turn first to the question of whether petitioning creditors sustained their burden required by § 303(b)(1), notwithstanding that there were disputes as to the claims of one or more of the petitioning creditors; one of them is a secured creditor; the debt was not due as to one of them; and there was a functional relationship between personnel of Wayne Dalton and Glass City. Debtor contends that petitioning creditors have not sustained that burden for all of the foregoing reasons. The examination of this question begins with the requirement of § 303(b)(1) that each of the three petitioning creditors holds a claim against the putative debtor. In order to determine whether this is true, despite the stated objections for each of the entities here in question, we look at the definition of "claim" contained in § 101(4) of the Bankruptcy Code:

"(4) "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated fixed, contingent, ma-

tured, unmatured, disputed, undisputed, legal, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;"

One need thus look no further than the statute itself for a determination that "claim" for purposes of the Bankruptcy Code includes disputed claims and unmatured claims, and debtor's objection on these scores must be found to be without merit. As to disputed claims particularly, see review of the cases at *Matter of B. D. International Discount Corp.* 5 C.B.C.2d 813, 13 B.R. 635 at footnote 13 (Bkrtcy.S.D., N.Y. 1981). With respect to the contention that Wayne Dalton is a fully secured creditor and therefore disqualified, we need not decide this question for the reason that this position is not established by the evidence. This record reflects that there is a dispute as to the amount owed by debtor to Wayne Dalton, and Wayne Dalton places that amount at $396,818.62. Salem testified that the value of the collateral liened by debtor to Wayne Dalton was $288,000.00. It may be, therefore, that Wayne Dalton is only partially secured. Where this is so, a petitioning creditors is not disqualified in an involuntary case. *In re Gibraltor Amusements,* Ltd. 187 F.Supp. 931 (D.C., E.D., N.Y., 1960.) See also *In re All Media Properties* 2 C.B.C.2d 449, 465, 5 B.R. 126 (Bkrtcy.S.D. Tex., 1980) holding that by failing to mention its security, a debtor may waive it. Finally, the evidence presented is insufficient to sustain debtor's proposition that Glass City should be disregarded as a petitioning creditor because it is not really a separate entity from Wayne Dalton. We conclude, therefore, that debtor's motion to dismiss must be overruled to the extent that it contends that there has not been compliance with 11 U.S.C. § 303(b)(1), and as well this issue must be found against debtor at the conclusion of all of the evidence.

■ There remains the question of whether petitioning creditors have proved, as required by § 303(h)(1), that the debtor is generally not paying its debts as they become due, a second ground which is the subject of debtor's motion to dismiss at the close of the case of the petitioning creditors. On this score, we find in favor of debtor. In making their case on this point petitioning creditors relied entirely upon opinion testimony of their expert, Cromer. Cromer based his opinion squarely upon the fact which his investigation established, that more than 90% of the some $400,000.00 in accounts payable of debtor past due were more than 90 days past due. In fact, of this amount the great bulk was the indebtedness to the single creditor, Wayne Dalton. Cromer was unaware that the Wayne Dalton account was disputed. As we have stated, it is our conclusion that there was a genuine dispute about the over-age account payable to Wayne Dalton. Debtor was current in its on-going purchases from Wayne Dalton. Perhaps the reason for this is that Wayne Dalton had placed debtor on a C.O.D. basis, but the fact is that debtor's on-going purchases from Wayne Dalton are far from insubstantial, and these are being paid.

■ We will not take into account the Wayne Dalton arrearage in determining whether debtor is paying its bills as they become due, because it is genuinely disputed. It would simply not make sense to do otherwise. The provision at § 303(h)(1) is intended to be a test of insolvency, and where a debt is not being paid for demonstrably other reasons than insolvency, the test is not met. See also *In re All Media Properties,* 2 C.B.C.2d 449, 469–70, 5 B.R. 126, (Bkrtcy., S.D., Tex., 1980). Cromer did not testify that it would be his conclusion that debtor was not paying its debts as they became due on the basis of $14,000.00 or $16,000.00 in overdue accounts payable. Accordingly, petitioning creditors failed to prove compliance with § 303(h)(1).

■ Nor does this record support the conclusion that debtor was not generally paying its debts as they became due independent of the expert testimony. Apart from

the amount claimed by Wayne Dalton, accounts payable of debtor older than 90 days totalled less than $14,000.00 and the total amount of past due accounts payable of the debtor was something less than $16,-000.00. This is of total accounts payable of debtor of $397,196.96. This evidence alone, undistinguished as to number and amount of creditors, as well as uninformative about their comparative relationship to current accounts, cannot show compliance with the test of § 303(h)(1).

Petitioning creditors refer us to *Matter of Covey,* 650 F.2d 877, 4 C.B.C.2d 719 (7th Cir., 1981) to support their contention for a different outcome. It is true that that case holds, somewhat at variance with *All Media,* that whether or not a disputed claim should be counted in connection with the test of § 303(h)(1) should be decided on a case by case basis. This does not help petitioning creditors here, for we have in effect applied such a test in reaching the conclusion we have. In addition, *Covey* is to be distinguished from that before us on a fact regarded as very significant by that court, that debtor had ceased operating its business. That is not the situation in the case before us.

Debtor's motion to dismiss will be granted.